SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State of New Jersey v. Julie Kuropchak (A-41-13) (072718)**

**Argued October 21, 2014 -- Decided April 28, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers the admissibility of evidence in the prosecution of driving while intoxicated (DWI) cases.

On January 25, 2010, at approximately 2:00 p.m., defendant had a sip of a margarita. Later, feeling ill, defendant took Nyquil and a homemade remedy of apple cider vinegar and water. At 8:30 p.m., defendant met with her doctor who prescribed an antibiotic and two pain relievers. Defendant immediately picked up the prescriptions, but did not take either. Driving home from the pharmacy, defendant turned onto a two-lane, two-way road that sloped uphill. When she reached the top of the hill, she saw an approaching vehicle straddling the center line. Defendant hit her brakes, swerved, collided with the oncoming vehicle, and lost consciousness. When she woke up, the car was filled with smoke and she tasted blood in her mouth. Officer Dennis Serritella responded to the scene and performed three sobriety tests, two of which defendant failed. He observed that she looked down multiple times, spaced out her steps, slurred her speech, and had bloodshot and watery eyes. Concluding that she was intoxicated, he arrested her.

Defendant agreed to take an Alocotest (breathalyzer), which certified operator Officer Jose Brito performed. First, he observed her for twenty minutes. At 10:08 p.m., the machine performed a control test. He then administered the first set of tests at 10:11 (tests one through four). On tests two and three, defendant failed to produce the minimum volume of air for the Alcotest to generate a blood-alcohol level. The first and fourth tests yielded results, but they were not within an acceptable tolerance range. At 10:35 p.m., the Alcotest machine self-performed another control test. Officer Brito administered a second set of tests at 10:37 (tests five and six). Both tests yielded results, but they were also not within an acceptable tolerance range. The machine performed a control test at 10:53 p.m., after which Officer Brito administered a third set of tests at 10:54 (tests seven through nine). Defendant failed to produce a minimum volume of air on test seven. Tests eight and nine, however, both generated results of .10% BAC, which were within an acceptable tolerance range.

At trial, Gary Aramini, an Alcotest expert, and Officer Serritella testified. Aramini said that the tests were done improperly and that the State had failed to enter the right simulator solution Certificate of Analysis and the most recent Calibrating Unit New Standard Solution Report into evidence. He also testified that Officer Brito failed to wait the required twenty minutes between the second and third set of tests and that lip balm, blood in defendant's mouth, and a cell phone in the testing room may have tainted the results. The court admitted the Drinking Driving Questionnaire (DDQ) and Drinking Driving Report (DDR) into evidence as business records. The court also admitted Officer Brito's Alcotest Operator Certification, the Alcotest Calibration Certificate, Part I -- Control Tests, the Alcotest Calibration Certificate, Part II -- Linearity Tests, the Calibrating Unit New Standard Solution Report for solution control lot number 08J060, and a Certificate of Analysis 0.10 Percent Breath Alcohol Simulator Solution. This Certificate was admitted without objection; however, the State concedes that it was for lot 09D065 rather than 08J060, which was the simulator solution used in defendant's control test.

On August 10, 2010, the municipal court found defendant guilty of DWI. On de novo review, giving due deference to the municipal court's credibility determinations, the Law Division found defendant guilty of DWI. The Appellate Division affirmed defendant's conviction. This Court granted defendant's petition for certification, limited to the admissibility of the documentary evidence, the Alcotest results, and the sufficiency of the observational evidence. State v. Kuropchak, 216 N.J. 360 (2013).

**HELD**: The municipal court's admission of the Alcotest results without the foundational documents required by State v. Chun, 194 N.J. 54 (2009) was error. Further, because the DDQ and DDR contained inadmissible hearsay, which may have unduly influenced the municipal court's credibility findings, the matter is remanded for a new trial.

1. If a municipal court convicts a defendant of DWI, the defendant must first appeal to the Law Division. The Law Division reviews the municipal court's decision de novo, but defers to credibility findings of the municipal court.

Appellate courts should defer to trial courts' credibility findings. Occasionally, however, a trial court's findings may be so clearly mistaken that the interests of justice demand intervention and correction. (pp 15-17)

2. A court may convict a defendant of DWI if she registers a blood alcohol level of 0.08% or higher. This finding of guilt is subject to proof of the Alcotest's reliability. The operator must observe the subject for twenty minutes. After twenty minutes, the Alcotest machine automatically conducts a blank air test to determine if there are any chemical interferents in the room. Additionally, a control test is conducted; if the Alcotest is working properly, that control test will generate a result between 0.095 and 0.105. The State must also admit certain foundational documents: (1) the most recent calibration report prior to a defendant's test, with part I--control tests, part II--linearity tests, and the credentials of the coordinator who performed the calibration; (2) the most recent new standard solution report prior to a defendant's test; and (3) the certificate of analysis of the 0.10 simulator solution used in a defendant's control tests to prove that the Alcotest was in working order. (pp. 17-18)

3. Here, the last semi-annual calibration was completed on January 12, 2010, with simulator solution control lot 09D065. The solution control lot for the control test performed prior to and following the three rounds of breath tests performed on defendant was solution control lot 08J060. Under Chun, the State was required to provide the Certificate of Analysis of the 0.10 Simulator Solution used in defendant's control test. The State, however, mistakenly admitted the Certificate of Analysis for the semi-annual simulator solution control lot 09D065 instead. Additionally, the most recent Calibrating Unit New Standards Solution Report was not admitted into evidence during the State's case. Given that the foundational documents were not admitted into evidence, the State presented no evidence as to the reliability or accuracy of the Alcotest results and, therefore, defendant's conviction of per se intoxication was improper. (pp. 18-20)

4. Defendant contends that the DDR and the DDQ were admitted into evidence in violation of the Confrontation Clause. A person charged with a criminal offense has the right to confront his accusers. Officer Serritella's documentation of the incident must be considered the recordation of testimonial statements because his observations were made to establish that defendant was driving while intoxicated. Since the officer testified at trial and was extensively cross-examined, the Confrontation Clause was not violated by the admission of the DDR and DDQ. (pp. 20-23)

5. As for defendant's contention that the DDR and DDQ are hearsay not subject to any exception, the Court observes that hearsay is inadmissible unless it fall into one of certain recognized exceptions. To qualify as a business record, a writing must: (1) be made in the regular course of business, (2) within a short time of the events described in it, and (3) under circumstances that indicate its trustworthiness. Foundational reports for breath testing, with certain qualifications, are admissible under the business record exception to the hearsay rule. Here, however, the DDR contains a narrative account of what the officer saw at the scene and includes factual statements, observations, and the officer's opinions. Thus, the DDR contains inadmissible hearsay. Although the DDQ also does not appear initially to constitute hearsay, it incorporates by reference the DWI report in the "remarks" section and the DWI report, in turn, contains several inadmissible opinions. The DDQ's content thus also rises to the level of inadmissible hearsay and must be excluded. Therefore, the DDR and the DDQ were inadmissible hearsay outside the scope of the business records exception. (pp. 23-25)

6. Here, the municipal court heard defendant's testimony concerning the events on the day of the incident, as well as the testimony of Officer Serritella. The court found the Officer's testimony more credible than defendant's and therefore found defendant guilty. The court's credibility determinations, however, were made after the DDR and the DDQ were admitted into evidence, notwithstanding the impermissible hearsay statements they contained, and after the Alcotest results were admitted into evidence despite the lack of requisite foundational documents. The cumulative effect of the inclusion of the DDR, the DDQ, and the Alcotest results may have tilted the municipal court's credibility findings. Thus, the Court lacks sufficient confidence in the proceedings to sanction the result reached and concludes that the interests of justice require a new trial. It is only because of the unique confluence of events in this case – the inappropriate admission of the Alcotest results as well as the DDR and DDQ – that the Court remands for a new trial. Had the only flaw been the admission of the DDR and DDQ, which contained hearsay, Officer Serritella's testimony would have alleviated much of that problem. Here, however, the cumulative effect of the errors may have tilted the municipal court's credibility findings. (pp. 25-26)

The judgment of the Appellate Division is **REVERSED.** The matter is **REMANDED** for a new trial.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

  v.

JULIE KUROPCHAK,

 Defendant-Appellant.

Argued October 21, 2014 – Decided April 28, 2015

On certification to the Superior Court,
Appellate Division.

John V. Saykanic argued the cause for
appellant (Miles R. Feinstein, attorney; Mr.
Saykanic and Mr. Feinstein, on the briefs).

David A. Malfitano, Assistant Prosecutor,
argued the cause for respondent (John L.
Molinelli, Bergen County Prosecutor,
attorney).

John Menzel argued the cause for amicus
curiae New Jersey State Bar Association
(Paris P. Eliades, President, attorney;
Ralph J. Lamparello, of counsel and on the
brief).

Robyn B. Mitchell, Deputy Attorney General,
argued the cause for amicus curiae Attorney
General of New Jersey (John J. Hoffman,
Acting Attorney General, attorney).

 JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

 This case poses important questions about the admissibility

of certain evidence in the prosecution of driving while

intoxicated (DWI) cases. After a four-day trial, defendant Julie Kuropchak was convicted by a Garfield Municipal Court Judge of DWI contrary to N.J.S.A. 39:4-50. The court heard testimony from the arresting officer, the officer who operated the Alcotest machine, defendant's expert on Alcotest procedure, defendant, and defendant's father and brother. The court also admitted, over defendant's objection, the Drinking Driving Questionnaire (DDQ) and Drinking Driving Report (DDR) completed by the arresting officer upon questioning defendant. Defendant did not object to various documents, including documents alleged to establish that the Alcotest breath-testing device was in working order when used to measure defendant's blood alcohol content (BAC).

The municipal court found defendant guilty based on two independent grounds: first, the officers' observations of her behavior, which the court found more credible than defendant's account of the incident and; second, the Alcotest results, which reported a .10 BAC. After a trial de novo, the Law Division also found defendant guilty based on the officers' observations and the Alcotest results. Defendant appealed. The Appellate Division expressed some reservations about the sufficiency of the foundational documents offered in support of the Alcotest, but did not decide the admissibility of the test results. The panel did determine that the DDQ and DDR were admissible under

the business records exception to the hearsay rule and that, because the arresting officer testified as to the contents of the reports, there was no violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. The appellate panel held that there was sufficient credible evidence in the record to support defendant's DWI conviction and accordingly affirmed.

We hold that it was error to admit the Alcotest results without the foundational documents required by State v. Chun, 194 N.J. 54, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008). Further, although we find no violation of the Confrontation Clause with respect to the admission of the DDQ and the DDR, we determine that those reports constitute inadmissible hearsay. We conclude that consideration of this improperly admitted evidence may have unduly influenced the municipal court's credibility findings. Therefore, we reverse the judgment of the Appellate Division and remand for a new trial.

I.

On January 25, 2010, defendant and three friends went to Houlihan's Restaurant in Hasbrouck Heights. They arrived between 2:00 and 3:00 p.m. and stayed for approximately two hours. They shared appetizers, and defendant took a sip of her friend's margarita. At trial, defendant testified that she did

3

not drink any other alcohol that day but had taken a dose of Apidex, an appetite suppressant, at 9:00 a.m. the day before.

After leaving the restaurant, defendant returned home alone. Feeling ill from a urinary tract infection, defendant took Nyquil and a homemade remedy of apple cider vinegar and water. Defendant had an appointment with her doctor at 8:30 p.m. that evening; the doctor prescribed an antibiotic and two pain relievers. Defendant picked up the prescription at 8:48 p.m. at a pharmacy adjacent to the doctor's office, but did not take any medication at that time.

On her way home, defendant turned onto Chestnut Street, a two-lane, two-way road that slopes uphill in the direction defendant was driving. As she reached the top of the hill, defendant saw a vehicle approaching from the opposite direction. According to defendant, the vehicle was straddling the center line and thus driving in both lanes. The vehicle had an interior light on but its headlights were off. Defendant hit her brakes and swerved to the left of the oncoming car. According to her testimony, she chose to swerve left instead of right to avoid the cars parked along the right-hand side of the road.

Defendant's car collided head-on with the oncoming vehicle. The driver of the other vehicle was later charged with driving while intoxicated. The collision caused defendant to lose

consciousness.  When she awoke, the airbags had deployed and the car was filled with smoke and dust.  Defendant testified that she tasted blood in her mouth, her chest hurt, and a piece of her necklace had become embedded in her neck.

Officer Dennis Serritella of the Garfield Police Department arrived at the scene.  He observed that the vehicles appeared to have collided head-on and that defendant's car was in the wrong lane.  Officer Serritella asked defendant for her credentials; he stated that she stared at him for a "few moments" and then produced them slowly.  According to Officer Serritella, defendant declined to go to the hospital.  She told Officer Serritella that she was coming from her doctor's office and showed him the prescriptions.  Defendant tried to drink water, but was forbidden to do so.

Officer Serritella advised defendant that he was going to conduct field sobriety tests, and led her to flat ground about twenty feet from the accident.  Officer Serritella began with the finger-to-nose test, which defendant passed.  He then conducted the one-legged balance test, which requires the subject to stand on one leg for thirty seconds.  Defendant failed the test, dropping her leg "many times."  She explained to Officer Serritella that she had had surgeries on her feet at age thirteen that left her with pinched nerves and rendered her unable to balance on one leg.  Lastly, Officer Serritella

conducted the walk-and-turn test, which requires the subject to walk nine paces in a heel-to-toe manner while keeping her head up, and then turn around and walk in the opposite direction. Defendant failed this test, as she looked down multiple times and spaced out her steps. Officer Serritella also observed that defendant swayed as she walked, her knees sagged, her speech was slow and slurred, her demeanor was sleepy, her eyes were bloodshot and watery, her hands moved slowly, and her face was pale. However, he did not smell alcohol on her breath.

Based on his observations, Officer Serritella concluded that defendant was intoxicated. He handcuffed her and brought her to police headquarters. At several points defendant asked why she was being treated like a criminal when she had done nothing wrong. At headquarters, Officer Serritella arrested defendant and read her Miranda[1] rights.

Officer Serritella read defendant the DMV Standard Statement for Operators of a Motor Vehicle, which informed defendant of her rights and obligations with respect to providing a breath sample. Defendant consented to take an Alcotest, or breathalyzer test. During the municipal court trial, Officer Serritella testified that all cell phones were removed from the testing room. Defendant testified that her

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

cell phone was in the testing room the entire time, that she applied lip balm multiple times during the Alcotest process, and that she had a tongue ring in her mouth during the tests.

Officer Jose Brito, a certified Alcotest operator, conducted the tests. Officer Brito observed defendant for twenty minutes before he administered the Alcotest. At 10:08 p.m., the machine performed a control test. Officer Brito then administered the first set of tests to defendant at 10:11 (test one), 10:13 (test two), 10:15 (test three), and 10:17 (test four). On the second and third tests, defendant failed to produce the minimum volume of air for the Alcotest to generate a blood-alcohol level. The first and fourth tests yielded results, but they were not within acceptable tolerance ranges of each other.[2]

At 10:35 p.m., the Alcotest machine self-performed another control test. Then, Officer Brito administered a second set of tests at 10:37 (test five) and 10:40 (test six). Both tests yielded results, but they were not within acceptable tolerance ranges of each other. The machine performed another control

_____

[2] To be valid, an Alcotest must generate two readings within acceptable tolerance of each other out of a maximum of eleven attempts. "Tolerance is the range of any set of measurements that is accepted as being representative of a true reading . . . [and] the wider the acceptable tolerance between reported results, the lower our confidence in the accuracy of any of the reported results." Chun, supra, 194 N.J. at 110.

7

test at 10:53 p.m., after which Officer Brito administered a third set of tests at 10:54 (test seven), 10:56 (test eight), and 10:58 (test nine). Defendant failed to produce a minimum volume of air on the seventh test. The eighth and ninth tests, however, both generated a result of .10% BAC, and were thus within acceptable tolerance of each other.

At trial, Gary Aramini, an expert on the Alcotest procedure who had reviewed the discovery documents provided to him, testified for the defense that the Alcotest was improperly conducted and that the State failed to enter into evidence two documents that are required under Chun to show that the Alcotest is properly calibrated: the proper simulator solution Certificate of Analysis and the most recent Calibrating Unit New Standard Solution Report. He also stated that Officer Brito failed to wait the required twenty minutes between the second and third set of Alcotest sequences. Lastly, Aramini testified that lip balm, blood in defendant's mouth, and the presence of a cell phone in the testing room could have tainted the Alcotest results.

In addition to testimony, the court admitted into evidence various documents. Officer Serritella testified and laid a foundation for the DDQ and DDR. After his testimony and over a defense objection, the court admitted those documents into evidence as business records under N.J.R.E. 803(c)(6).

8

The court also admitted into evidence certain documents to establish a foundation for the Alcotest machine, as well as the simulator unit that is used to calibrate the device and the chemical composition of the solutions that the machine requires. Such foundational evidence is mandatory pursuant to Chun, supra, 194 N.J. at 142. The documents included Officer Brito's Alcotest Operator Certification, the Alcotest Calibration Certificate, Part I -- Control Tests, and the Alcotest Calibration Certificate, Part II -- Linearity Tests. The latter two documents were signed by Officer Robert Demler and dated January 12, 2010; all three were admitted without objection.

The court also admitted the Calibrating Unit New Standard Solution Report for solution control lot number 08J060 dated January 25, 2010, and signed by Officer Ronald Polonkay. This document, however, was admitted at the conclusion of limited rebuttal testimony from Officer Serritella.

Finally, the court admitted a Certificate of Analysis 0.10 Percent Breath Alcohol Simulator Solution. This Certificate was admitted without objection; however, the State concedes that it was for lot 09D065 rather than 08J060, which was the simulator solution used in defendant's control test. Accordingly, the State admitted the incorrect document.

On August 10, 2010, the municipal court found defendant guilty of DWI based on two independent grounds. First, the

9

municipal court found defendant guilty based on the .10 BAC Alcotest results. Second, the municipal court found that the officers' observations of defendant's behavior at the scene of the accident established defendant's guilt.

In its oral decision, the municipal court noted that Officer Serritella and Officer Brito were "entirely credible," "more credible" than defendant. The municipal court also found that the Alcotest was operated properly. The court noted that, "without going through each document," the State entered the correct documents into evidence to show that the Alcotest was properly calibrated. The court determined, further, that defendant's expert testimony was "unpersuasive." The court sentenced defendant, a third-time offender, to 180 days in jail, a ten-year driver's license suspension, and a three-year interlock on her ignition following the suspension period. The court also assessed monetary fines and penalties.

The Law Division reviewed the case de novo pursuant to Rule 3:23-8 and, on July 19, 2011, the court found defendant guilty of DWI based on both the physical evidence at the scene and the Alcotest results, giving due deference to the municipal court judge's credibility determinations.

The Appellate Division affirmed defendant's conviction. The panel first considered the Alcotest results. The panel noted certain inadequacies as to the foundational evidence the

10

State introduced in support of the Alcotest. Nonetheless, the panel declined to address whether the evidential record fairly supported the Law Division's guilty finding under the per se prong of the DWI statute, because it found that the observational evidence against defendant sufficient to support her conviction under the statute's other prong.

Addressing defendant's evidentiary challenges, it concluded that the municipal court properly admitted the DDR and the DDQ under the business records exception to the hearsay rule. Although the panel found the transcript to be unclear as to whether the municipal judge was marking the documents for identification or admitting them into evidence before Officer Serritella testified, it concluded that any harm presented by the premature admission of the reports into evidence was soon mitigated by Officer Serritella's testimony about the contents of the reports. The panel also found that because Officer Serritella, who authored the reports, testified at trial and was extensively cross-examined, the reports' admission did not violate defendant's right to confrontation under the Sixth Amendment. U.S. Const. amend. VI.

The panel ultimately held that, based on the location of defendant's vehicle, Officer Serritella's observations at the scene of the accident, and defendant's performance on the field

11

sobriety tests there was sufficient credible evidence in the record to support defendant's DWI conviction.

Defendant filed a petition for certification, which this Court granted limited to the admissibility of the documentary evidence and the Alcotest results, and the sufficiency of the observational evidence. State v. Kuropchak, 216 N.J. 360 (2013). The New Jersey Attorney General and the New Jersey State Bar Association appeared as amici curiae.

## II.

Defendant argues that the municipal court admitted the DDQ and the DDR before the State laid a proper foundation for them, thus presupposing that police officers and the reports they write are inherently reliable. Defendant also argues that narrative reports such as the DDQ and the DDR violate Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), because they are testimonial hearsay.

With respect to the observational evidence of defendant's guilt, defendant argues that the record does not support her conviction. Defendant asserts that each fact that incriminates her is also consistent with an innocent explanation. For example, the fact that defendant's car was found in the wrong lane is explained by the fact that the other vehicle was driving in the middle of the road and defendant swerved to the left to avoid hitting parked cars. Defendant alleges that the other

12

purported indicia of defendant's intoxication -- such as her slowness in responding, pale complexion, slurred speech, and bloodshot eyes -- are attributable to the severity of the motor vehicle accident, airbag deployment, and an illness that caused her to seek medical help shortly before the collision. Furthermore, defendant maintains that she failed two of the field sobriety tests because of prior foot surgeries which continue to affect her balance.

Lastly, defendant argues that the municipal court should have suppressed the Alcotest results. First, defendant asserts that the State failed to lay a proper foundation for the results as required by Chun. Defendant also notes that, contrary to Chun, not all of the requisite documents were introduced during the State's case-in-chief.

The State contends that defendant's trial did not raise any Confrontation Clause issues because Crawford addresses the admissibility of testimonial evidence when a witness does not testify. Here, on the contrary, Officer Serritella drafted the police reports and testified at trial. The State therefore argues that because the reports only contained statements by Officer Serritella and defendant, who both testified at trial, the statements did not violate the Confrontation Clause.

The State also argues that the observational evidence in this case is sufficient to sustain defendant's conviction. It

13

emphasizes that Officer Serritella observed several separate indicia of intoxication:  defendant's vehicle was in the wrong lane; she was slow to respond and to produce her credentials; she failed two of the field sobriety tests; she swayed as she walked; her speech was slow and slurred; her demeanor was sleepy; and her eyes were bloodshot and watery.  Even though defendant proffers various innocent explanations, the State maintains that those observations should be considered in the aggregate.  The State also contends that the municipal court judge found the State's witnesses more credible than defendant.

The Attorney General, appearing as amicus curiae, urges this Court to affirm defendant's conviction.  The Attorney General argues that the municipal court did not err by admitting the DDR and DDQ into evidence under the business records exception to the hearsay rule, N.J.R.E. 803(c)(6), because the police prepared these reports in the regular course of business, shortly after the events described in the reports, and in a manner that justifies their admission.

Additionally, the Attorney General asserts that the municipal court correctly admitted into evidence the Calibrating Unit New Standard Solution Report dated January 25, 2010, one of the foundational documents for the Alcotest, because the court had allowed the State to reopen its case.  The Attorney General admits, however, that the correct Certificate of Analysis for

14

the 0.10 simulator solution does not appear to have been entered into evidence.  Additionally, the Attorney General asserts that even though defendant provided individual explanations for her behavior when questioned by Officer Serritella, when viewed in the aggregate, the numerous indicia of intoxication observed by Officer Serritella were more than adequate to establish defendant's intoxication.

The New Jersey State Bar Association (NJSBA), also appearing as amicus curiae, argues that narrative police reports including the DDR and DDQ should not be considered business records under N.J.R.E. 803(c)(6), absent a stipulation by the parties, because those reports contain testimonial statements and are "prepared for the primary purpose" of criminal prosecution.  The NJSBA also asks this Court to reaffirm that strict compliance with Chun, supra, is required, and to hold that the Alcotest results in this matter were not admissible due to the State's failure to offer proper core foundational documents.  The NJSBA contends that because the appellate panel ultimately affirmed defendant's conviction on the observational prong, it did not determine whether the evidentiary record would support a conviction on the per se prong.

### III.

A conviction for DWI requires proof beyond a reasonable doubt.  State v. Kashi, 360 N.J. Super. 538, 544 (App. Div.

15

2003) (citation omitted), aff'd, 180 N.J. 45 (2004).  If a municipal court convicts a defendant of DWI, the defendant must first appeal to the Law Division.  R. 7:13-1; R. 3:23-1.  The Law Division reviews the municipal court's decision de novo, but defers to credibility findings of the municipal court.  State v. Johnson, 42 N.J. 146, 157 (1964).

"Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Locurto, 157 N.J. 463, 474 (1999).  Thus, appellate review is limited to "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record."  Johnson, supra, 42 N.J. at 162.  "This involves consideration of the proofs as a whole," and not merely those offered by the defendant.  Ibid.  "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]"  R. 2:10-2; see also State v. Macon, 57 N.J. 325, 338 (1971); Chapman v. California, 386 U.S. 18, 23, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710 (1967) ("'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230, 11 L. Ed.

16

2d 171, 273 (1963))). Occasionally, however, a trial court's findings may be so clearly mistaken "that the interests of justice demand intervention and correction." Johnson, supra, 42 N.J. at 162. Moreover, legal conclusions are subject to de novo review. State v. Gandhi, 201 N.J. 161, 176 (2010).

IV.

We first address whether a proper foundation was laid for the admission of the Alcotest results. A court may convict a defendant of DWI if she registers a blood alcohol level of 0.08% or higher. N.J.S.A. 39:4-50(a); State v. Bealor, 187 N.J. 574, 588 (2006). This finding of per se guilt, however, is subject to proof of the Alcotest's reliability.

In Chun, this Court set forth mandatory guidelines for establishing the Alcotest's reliability. First, when the test is administered, an Alcotest operator must observe a subject for twenty minutes before commencing the test to ensure that the subject does not put anything, such as alcohol, tobacco, or chewing gum in his or her mouth during that time. 194 N.J. at 79. The operator should also remove all "cell phones and portable devices" from the testing room. Id. at 80. After twenty minutes, the Alcotest machine automatically conducts a "blank air test" to determine "if there are chemical interferents in the room." Ibid. Additionally, a "control test" is conducted; if the Alcotest is working properly, that

17

control test will generate a result between 0.095 and 0.105. Ibid. A similar control test is completed as part of the Alcotest's semi-annual calibration. Id. at 144-45.

In Chun, supra, we directed that the Alcotest "be programmed to fix the tolerance range to be plus or minus 0.005 percent BAC from the mean or plus or minus five percent of the mean, whichever is greater," to ensure reliable results. Id. at 116. If the first and second tests are not within acceptable tolerance of each other, "the machine prompts the operator to conduct a third breath test," and so on. Id. at 81. We also required the State to admit certain foundational documents to prove that the Alcotest was in working order. Id. at 145. They are:

> (1) the most recent calibration report prior to a defendant's test, with part I--control tests, part II--linearity tests, and the credentials of the coordinator who performed the calibration; (2) the most recent new standard solution report prior to a defendant's test; and (3) the certificate of analysis of the 0.10 simulator solution used in a defendant's control tests.
>
> [Ibid. (emphasis added).]

Here, the last semi-annual calibration was completed on January 12, 2010, with simulator solution control lot 09D065. The solution control lot for the control test performed prior to and following the three rounds of breath tests performed on defendant was solution control lot 08J060. Under Chun, the

18

State was required to provide the Certificate of Analysis of the 0.10 Simulator Solution used in defendant's control test. Ibid. The State, however, mistakenly admitted the Certificate of Analysis for the semi-annual simulator solution control lot 09D065 instead of the Certificate from defendant's control test.

Additionally, contrary to Chun, the record shows that the most recent Calibrating Unit New Standards Solution Report was not admitted into evidence during the State's case. During the State's case, the municipal court admitted into evidence the Calibrating Unit New Standard Solution Report dated January 12, 2010. During cross-examination, defendant's expert testified that the State was required to enter into evidence the Calibrating Unit New Standard Solution Report, completed on January 25, 2010, as part of defendant's Alcotest. Upon recognition of this mistake, at the next trial session, the prosecutor presented, for identification, the Calibrating Unit New Standard Solution Report dated January 25, 2010. This document was then admitted into evidence. This admission, however, was inappropriate. The prosecutor moved to enter the correct Calibrating Unit New Standard Solution Report at the conclusion of limited rebuttal testimony from Officer Serritella that was unrelated to the Alcotest. Moreover, the document was admitted even though the State had not moved to reopen its case at that point.

19

We conclude that the foundational documents required under Chun were not admitted into evidence.  Therefore, the State presented no evidence as to the reliability or accuracy of the Alcotest results.  We thus hold that defendant's conviction of per se intoxication was improper.

V.

We now turn to defendant's arguments that the admission of the DDR and DDQ violated the New Jersey Rules of Evidence.  This Court uniformly has endorsed the proposition that "in reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008).  The general rule as to the admission or exclusion of evidence is that "[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion."  State v. Feaster, 156 N.J. 1, 82 (1998), cert. denied 532 U.S. 932 (2001); see also State v. J.A.C., 210 N.J. 281, 295 (2012).  Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'"  State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

A.

20

Defendant first contends that the DDR and the DDQ were admitted into evidence in violation of the Confrontation Clause and Crawford, supra, 541 U.S. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203. Additionally, the NJSBA contends that the DDR and DDQ are testimonial.

A person charged with a criminal offense has the right to confront his accusers. U.S. Const. amend. VI. This right is founded on the belief that subjecting testimony to cross-examination enhances the truth-discerning process and the reliability of the information. California v. Green, 399 U.S. 149, 159, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489, 497 (1970); State ex rel. J.A., 195 N.J. 324, 342 (2008).

The Confrontation Clause of the United States Constitution bars the "admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford, supra, 541 U.S. at 53-54, 124 S. Ct. at 1365, 158 L. Ed. 2d at 194. Additionally, hearsay that is testimonial in nature is inadmissible, even if it satisfies a recognized exception to the hearsay rule, when the declarant does not testify. See Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006); State v. Michaels, 219 N.J. 1, 31 (2014) (noting that New Jersey applies Crawford's primary-purpose test when assessing

21

testimonial nature of statement), cert. denied, ___ U.S. ___, 135 S. Ct. 761, 190 L. Ed. 2d 635 (2014).

Testimony "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." State v. Sweet, 195 N.J. 357, 373 (2008) (quoting Crawford, supra, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192), cert. denied, 557 U.S. 934, 129 S. Ct. 2858, 174 L. Ed. 2d 601 (2009). Additionally, "[s]tatements taken by police officers in the course of interrogations" are also testimonial. Davis, supra, 547 U.S. at 822, 126 S. Ct. at 2273, 165 L. Ed. 2d at 237 (citing Crawford, supra, 541 U.S. at 52, 124 S. Ct. at 1354, 158 L. Ed. 2d at 177).

In a criminal context, formal statements to government officers constitute testimony in a sense that a person's casual remark to an acquaintance does not. Sweet, supra, 195 N.J. at 373 (citing Crawford, supra, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192); see also Michaels, supra, 219 N.J. at 31-32 n.9 (noting Sweet's distinction between foundational and testimonial documents). Thus, the Confrontation Clause generally forbids admitting testimony of a witness who directly or indirectly provides information derived from a non-testifying witness, which incriminates a defendant at trial. Branch, supra, 182 N.J. at 350.

Officer Serritella's documentation of the incident must be considered the recordation of testimonial statements. Serritella's observations were made for the purpose of establishing or proving that defendant was driving while intoxicated. However, the officer testified at trial and was extensively cross-examined by defense counsel. Thus, the Confrontation Clause was not violated by the admission of the DDR and DDQ.

B.

We now turn to defendant's contention that the DDR and DDQ are inadmissible hearsay and do not fall within any of the hearsay exceptions.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Hearsay is inadmissible unless it falls into one of the recognized exceptions. N.J.R.E. 802. To qualify as a business record under N.J.R.E. 803(c)(6), a writing must meet three conditions: it must be made in the regular course of business, within a short time of the events described in it, and under circumstances that indicate its trustworthiness. State v. Matulewicz, 101 N.J. 27, 29 (1985) (citation omitted). The criteria to apply the business records exception have remained constant. Id. at 29; Sweet, supra, 195 N.J. at 370-71 (2008).

23

The rationale behind this exception is "'that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence.'" Matulewicz, supra, 101 N.J. at 29-30 (quoting Mahoney v. Minsky, 39 N.J. 208, 218 (1963)); see also Fagan v. City of Newark, 78 N.J. Super. 294, 309 (App. Div. 1963) (finding exception to be "founded upon the twin principles of reliability and necessity." (internal citations omitted)).

We recognize that foundational reports for breath testing, with certain qualifications, are admissible under the business record exception to the hearsay rule. Sweet, supra, 195 N.J. at 370-71; Chun, supra, 194 N.J. at 142. However, we have also recognized that police officers who draft reports have an interest in prosecuting defendants. See, e.g., State v. Simbara, 175 N.J. 37, 49 (2002) ("recognizing a laboratory certificate in a drug case is not of the same ilk as other business records, such as an ordinary account ledger . . . . [T]he analyst prepares the laboratory certificate . . . for the sole purpose of investigating an accused.").

On the first page, the DDR records the officer's observations by means of a checklist of indicia of intoxication. Officer Serritella checked off the items he observed. The second page of the DDR contains a narrative account of the

24

events Officer Serritella witnessed at the scene of the accident. The page includes factual statements, observations, and the officer's opinions. For example, Officer Serritella noted that upon being questioned about her well-being, defendant "stared back at him." Additionally, Officer Serritella wrote that she "paused for a few moments" and "appeared to be very slow in her actions and responses when questioned." Officer Serritella also noted that defendant became very defensive when questioned. Thus, the DDR contains inadmissible hearsay.

Although the DDQ also does not appear initially to constitute hearsay, it incorporates by reference the DWI report in the "remarks" section -- "see DWI report for incident details" -- and the DWI report, in turn, contains several inadmissible opinions. The DDQ's content thus also rises to the level of inadmissible hearsay and requires exclusion. Therefore, we hold that the DDR and the DDQ are inadmissible hearsay outside the scope of the business records exception. See N.J.R.E. 803(c)(6).

## VI.

An appellate court should engage in a "searching and critical" review of the record when it is faced with a trial court's admission of police-obtained statements to ensure protection of a defendant's constitutional rights. See State v. Pickles, 46 N.J. 542, 577 (1966).

25

Here, the municipal court heard defendant's testimony concerning the events on the day of the incident, as well as the testimony of Officer Serritella. The court found the Officer's testimony more credible than defendant's and therefore found defendant guilty.

The court's credibility determinations, however, were made after the DDR and the DDQ were admitted into evidence notwithstanding the impermissible hearsay statements they contained, and after the Alcotest results were admitted into evidence despite the lack of requisite foundational documents. The cumulative effect of the inclusion of the DDR, the DDQ, and the Alcotest results may have tilted the municipal court's credibility findings. Thus, we lack sufficient confidence in the proceedings to sanction the result reached and conclude that the interests of justice require a new trial. It is only because of the unique confluence of events in this case -- the inappropriate admission of the Alcotest results as well as the DDR and DDQ -- that we remand for a new trial. Had the only flaw been the admission of the DDR and DDQ, which contained hearsay, Officer Serritella's testimony would have alleviated much of that problem. Here, however, the cumulative effect of the errors may have tilted the municipal court's credibility findings.

VII.

26

Therefore, we reverse the judgment of the Appellate Division and remand for a new trial.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-41                        SEPTEMBER TERM 2013

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

    Plaintiff-Respondent,

            v.

JULIE KUROPCHAK,

    Defendant-Appellant.


DECIDED        April 28, 2015
            Chief Justice Rabner              PRESIDING
OPINION BY            Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |