**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0680-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES JOHNSON,

    Defendant-Appellant.

_____

Submitted May 11, 2022 – Decided July 15, 2022

Before Judges Gilson, Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-11-1721.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In April 2016, a convenience store at a gas station was burglarized. A jury convicted defendant Charles Johnson of five third-degree crimes, four of which were related to the burglary at the store and one of which related to drugs found on defendant when he was arrested. Specifically, defendant was convicted of burglary, N.J.S.A. 2C:18-2(a)(1); conspiracy to commit burglary, N.J.S.A. 2C:5-2(a)(1) and 2C:18-2(a)(1); theft, N.J.S.A. 2C:20-3(a); receiving stolen property, N.J.S.A. 2C:20-7(a); and possession of heroin, N.J.S.A. 2C:35-10(a)(1). Defendant was sentenced to an aggregate term of five years in prison. He appeals from his convictions and sentence. We reject his arguments and affirm.

I.

We summarize the facts from the evidence presented at trial. In the early morning hours of April 12, 2016, two individuals broke into a mini-mart store at a gas station in Edison (the Mini-mart). The Mini-mart was closed but had video surveillance cameras that recorded the break-in. The video footage showed an object thrown against the glass front door, the glass shattered, and a man and woman were then seen entering the Mini-mart. The man stepped directly in front of the camera, took several rolls of lottery tickets, and handed them to the woman who was near the doorway. The man then grabbed other

2

items from behind the counter before exiting the Mini-mart. Video from another camera outside the Mini-mart showed two individuals walking towards the Mini-mart and, shortly thereafter, walking away.

The Mini-mart had an alarm system, and the police and store owner were notified. When the police responded, the intruders were gone, but the police observed a ransacked store. The owner also came to the Mini-mart and, after surveying the scene, reported that lottery tickets and cigarettes had been stolen. The owner estimated that the lottery tickets were worth approximately $7,000.

During the ensuing investigation, the police collected the serial numbers of the stolen lottery tickets and sent a subpoena to the Lottery Commission to obtain information about locations where someone may have attempted to cash the stolen lottery tickets. Based on information from the Lottery Commission, the police learned that on April 12, 2016, hours after the break-in, lottery tickets had been presented at three local stores: Vilma Deli, Rahway Discount Liquors, and Bravo gas station.

Thereafter, Detective Nicholas Puccio, who was involved in the burglary investigation, visited those stores. At Vilma Deli, Puccio spoke with the owner who reported a man had tried to cash several lottery tickets on April 12, 2016. The deli had security cameras that had recorded the owner's interaction with the

man. Puccio reviewed the video footage but could not download the footage. Puccio, therefore, took photographs of some of the images on the video footage, including a photograph of the man.

When Puccio visited Rahway Discount Liquors, he met with the manager, who reported that a woman had attempted to cash a lottery ticket on April 12, 2016. The manager later testified that when the woman had attempted to cash a lottery ticket, he refused to cash it because of an alert requiring that the ticket be submitted to the Lottery Commission, and the woman left the store. That interaction was captured on the store's video surveillance system. Puccio could not download that video, but he took photographs of images from the video footage.

At the Bravo gas station Puccio reviewed store security video footage of someone attempting to cash lottery tickets on April 12, 2016. Puccio later testified at trial that no tickets cashed at Bravo were marked as missing or stolen.

On April 21, 2016, Puccio prepared a summary of information concerning what the police had learned about the burglary. That information included photographs of the man at the Mini-mart and a woman at an unidentified location. The summary also included a description of a dark color, older-model

4

Jeep that had been observed in video footage from one of the convenience stores. That summary was then sent to police agencies throughout New Jersey.

In response, Puccio learned that a Jeep, matching the description of the vehicle in his summary, had been stopped for speeding on April 21, 2016. The police were then able to obtain the license plate number of the vehicle and learned that defendant was the registered owner. The police also obtained defendant's address and a picture of defendant from the Motor Vehicle Commission (MVC).

Thereafter, the police conducted surveillances of defendant's home and the home of co-defendant Angie Wallace, who was identified as a woman with whom defendant spent time. During the surveillance, police observed defendant driving a brown 1989 Jeep Cherokee. They also observed the Jeep parked at Wallace's residence several times and Wallace riding in the vehicle as a passenger.

On May 5, 2016, defendant was arrested and taken to the Edison Police Station. At the station, defendant was searched, and he was found to be in possession of four wax folds of heroin. Defendant's Jeep was impounded, and police obtained a warrant to search the Jeep. During the search of defendant's

5

vehicle, police found ten lottery tickets, which police later confirmed matched some of the tickets reported as stolen.

Defendant and Wallace were charged with various crimes related to the burglary.[1] They were tried together. At trial, the jury heard testimony from fourteen witnesses. The State submitted over fifteen exhibits, including a recording of the video from the Mini-mart, a photograph of the man who appeared on the Mini-mart video, photographs of the surveillance footage from the Rahway Discount Liquors store, the MVC photograph of defendant, and a report concerning the stolen lottery tickets prepared by an employee of the Lottery Commission. In connection with the photograph from the Mini-mart video, Detective Puccio testified that he or another officer had taken photographs of the surveillance footage from the Mini-mart, including the still photograph of the face of the male suspect.

An employee of the Lottery Commission testified that she had created a report concerning lottery tickets in response to the police's subpoena, some of which were entered into the Commission's system as missing or stolen. She explained that she had retrieved information from the Commission's internal

---

[1] Wallace also filed an appeal from her convictions, and we address that appeal in a separate unpublished opinion. See State v. Wallace, Docket No. A-0678-19.

database on the tickets requested in the subpoena, including a list of times and locations where the lottery tickets had been scanned.

At trial, defendant objected to the admission of the MVC photograph, the photograph taken from the Mini-mart video, the photographs from the surveillance footage, and the report from the Lottery Commission. The trial court overruled those objections and admitted the photographs and report into evidence. Thereafter, defendant requested an adverse-inference instruction concerning Puccio's failure to preserve the surveillance videos from the Vilma Deli and the Rahway Discount Liquors store. The trial court denied that request.

During deliberation, the jury requested to review the video footage from the Mini-mart. During that playback, one or more of the jurors requested the video be stopped and then started again. Defendant moved for a mistrial, arguing that the jury acted improperly and deliberated during the playback of the footage. The trial court denied that motion.

The jury ultimately convicted defendant of all five crimes. On the conviction for receiving stolen property, defendant was sentenced to four years in prison. On all the other convictions, he was sentenced to five years in prison. All his sentences were run concurrent to each other and, therefore, in the

A-0680-19

aggregate, defendant was sentenced to five years in prison.  He now appeals

from his convictions and sentence.

## II.

On appeal, defendant makes six arguments:

> POINT ONE – THE TRIAL JUDGE ERRED WHEN SHE DENIED DEFENDANT'S REQUEST FOR AN ADVERSE-INFERENCE INSTRUCTION BASED ON THE DETECTIVE'S ABSENCE OF BAD FAITH IN FAILING TO PRESERVE RELEVANT MATERIAL.
>
> POINT TWO – THE OUTBURSTS BY SOME OF THE JURORS DURING THE INITIAL PLAYBACK OF THE MINI-MART VIDEO FOOTAGE WAS NOT ADEQUATELY ADDRESSED BY THE TRIAL JUDGE SO AS TO DENY DEFENDANT A FAIR TRIAL.
>
> POINT THREE – A TRIAL JUDGE'S DECISION TO ADMIT EVIDENCE WHICH DIVERTS THE JURORS FROM A REASONABLE AND FAIR EVALUATION OF A DEFENDANT'S FATE IS AN ABUSE OF DISCRETION.
>
> A.   The admission into evidence of the still photograph purportedly reproduced from the mini-mart video footage was erroneous because it was not authenticated properly.
>
> B.   The admission into evidence of the Motor Vehicle Commission photograph was erroneous because it had the capacity to cause an unjust result.

8

1. Using a "blurry" photograph of an SUV in the parking lot of a cashing location to connect defendant to the smash and grab is unduly prejudicial.

2. A new trial is warranted where the trial judge did not instruct the jury on the manner in which the Motor Vehicle Commission photograph of defendant was relevant.

POINT FOUR – THE TRIAL JUDGE ERRONEOUSLY ADMITTED INTO EVIDENCE AS A BUSINESS RECORD THE DIVISION OF LOTTERY COMPUTER PRINTOUT.

POINT FIVE – DEFENDANT'S CONVICTIONS FOR RECEIVING STOLEN PROPERTY AND POSSESSION OF CDS WERE NOT SUPPORTED BY THE EVIDENCE.

A. The State's explanation as to why the mini-mart owner's list of stolen lottery tickets differed from the list subpoenaed from the Division of Lottery was not sufficient to submit the receiving stolen property charge to the jury, particularly where identification of the mini-mart perpetrator was the material issue and defendant did not attempt to cash any lottery tickets, stolen or otherwise.

B. Detective Puccio's testimony that defendant was charged with possession of CDS after his person was searched at police headquarters by another officer was not sufficient to submit the possessory drug offense to the jury where the lead detective did not witness the search, a search at the scene did not reveal any contraband and no

9

technology captured the seizure at the police station.

POINT SIX – THE TRIAL JUGE ERRONEOUSLY REJECTED DEFENDANT'S ASSERTION THAT MITIGATING FACTOR SIX WAS APPLICABLE.

We are not persuaded by any of these arguments.

A.     The Request for an Adverse-Inference Instruction.

Defendant argues the trial judge erred in denying his request to charge the jury with an adverse-inference instruction regarding Detective Puccio's failure to preserve surveillance videos from locations where some of the stolen lottery tickets were presented.  He maintains Puccio had an obligation to preserve the videos because they were relevant, and an adverse-inference instruction was necessary to "balance the scales."

An adverse-inference instruction is warranted when a party's failure to preserve evidence "raises a natural inference that the party so failing fears exposure of those facts [that] would be unfavorable to [that party]."  State v. Brown, 463 N.J. Super. 33, 53 (App. Div. 2020) (quoting Torres v. Pabon, 225 N.J. 167, 181 (2016)).  Neither proof of bad faith nor a showing that evidence is exculpatory is required for a court to give an adverse-inference charge.  State v. Richardson, 452 N.J. Super. 124, 138 (App. Div. 2017).  No adverse-inference charge is necessary, however, when "relevant evidence [is] not lost or

10

destroyed" and an accurate duplicate is made and shown to the jury. Brown, 463 N.J. Super. at 53. We review a failure to give an adverse-inference instruction for an abuse of discretion. Ibid.

Although the best practice would have been to preserve the videos, Puccio testified that he experienced problems downloading video footage at two of the stores he visited and instead preserved the evidence by taking photographs of images from the videos. The trial court found Puccio's testimony was consistent with the testimony presented by the store owner and manager and credited him for preserving the surveillance footage from the Mini-mart and taking photographs of surveillance videos from the stores when he was unable to download and copy the actual footage. The court also found that Puccio had not acted in bad faith in failing to preserve the surveillance footage.

In addition, the trial court found that the surveillance footage had not been destroyed by police or lost by an overt act by the store owners. In that regard, the manager of Rahway Discount Liquors testified that the store's surveillance video footage had been preserved for approximately two weeks before being erased and the owner of Vilma Deli testified he was not sure how long the recording system stored video surveillance, but at some point the footage had been erased. Accordingly, the trial court did not abuse its discretion in rejecting

11

defendant's request for an adverse-inference instruction. See Brown, 463 N.J. Super. at 53 (adverse-inference instruction not necessary when an "accurate duplicate was [] made and shown to the jury" and was supported by witness testimony explaining why an original video could not be preserved).

B.     The Playback of the Mini-mart Video.

After beginning its deliberations, the jury requested to see the video from the Mini-mart. In making that request, the jury asked to see the video on a laptop because they believed that would present a clearer picture than a playback on a projector. The judge arranged for jurors to view the video on a laptop in small groups. During the playback, some jurors expressed a desire to be able to pause and zoom in on portions of the video. After conferring with counsel, the trial judge ultimately allowed the foreperson to request that the video be paused at various points during the playback.

During sidebar discussions about how the video would be played for the jury, defense counsel objected and claimed that certain jurors were deliberating. The judge instructed the jurors that they were not to deliberate when she was conferring with counsel at sidebar discussions, but defense counsel argued that some jurors had continued to deliberate. The trial judge rejected that contention.

Following the playback, defendant moved for a mistrial. He argued that some jurors had deliberated about the playback during sidebar discussions. He also objected to the procedure where the foreperson was allowed to request the video to be paused at various points. In addition, he objected to the alternate jurors participating in the viewing of the playback.

We review a trial judge's denial of a motion for a mistrial for an abuse of discretion. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (quoting State v. Winter, 96 N.J. 640, 647 (1984)). In deciding a motion for a mistrial, a court should consider what took place and whether it had a prejudicial effect, whether the trial court gave a curative instruction, and whether the jury complied with the court's instruction. See Herbert, 457 N.J. Super. at 505-08. We will not disturb a ruling on a mistrial motion "absent an abuse of discretion that results in a manifest injustice." State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Jackson, 211 N.J. 394, 407 (2012)).

Here, we discern no abuse of discretion. Initially, we note that trial courts have broad discretion to allow playbacks requested by the jury. See State v. A.R., 213 N.J. 542, 555 (2013); State v. Burr, 195 N.J. 119, 135 (2008).

When the jury asked to stop the video and zoom in on frames, the judge held a sidebar with counsel and determined that there would be no zoom-ins but

asked defense counsel whether there was an objection to the video being stopped or replayed. Defense counsel did not object to the video being stopped and replayed and even suggested that instead of showing the video frame-by-frame to the jury, it would be more efficient to show the video and have the jury state when they wanted it paused. We discern no abuse of discretion in the trial judge's decisions on the procedures employed during the playback. We also reject defendant's argument that the jury continued to deliberate during sidebar discussions without instruction from the court to stop. The record establishes that the court instructed the jury to stop deliberating after defense counsel objected.

Finally, we reject defendant's arguments that it was improper to allow the alternate jurors to participate. The trial court correctly ruled that alternate jurors should see the playback and the record does not support defendant's arguments that the alternative jurors were improperly discussing issues with the empaneled jurors.

C. The Admission of Certain Photographs.

Defendant challenges the admission of three photographs: a photograph of the face of a man in the Mini-mart; the MVC photograph of defendant; and a photograph of a sport utility vehicle (SUV). Defendant argues that the

14

photograph from the Mini-mart was not properly authenticated, the MVC photograph was admitted without a limiting instruction, and the photograph of the SUV was blurry and prejudicial.

A trial judge's decision to admit or exclude evidence is entitled to deference absent a showing of an abuse of discretion. Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016). An appellate court "will not substitute [its] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" State v. Garcia, 245 N.J. 412, 430 (2021) (quoting State v. Medina, 242 N.J. 397, 412 (2020)).

To be admissible, photographs must be both relevant and authenticated. See N.J.R.E. 401 and 801(e). To be relevant, the photograph must "hav[e] a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Brenman v. Demello, 191 N.J. 18, 30 (2007) (alteration in original) (quoting N.J.R.E. 401). Under N.J.R.E. 801(e), a photograph must be "properly authenticated" to be admitted. Brown, 463 N.J. Super. at 51 (quoting State v. Wilson, 135 N.J. 4, 17 (1994)). N.J.R.E. 901 explains that the requirements of authentication are satisfied by evidence to support a finding that the matter is what its proponent claims. Ibid. "[A]ny person with the requisite knowledge of the facts represented in the photograph

or videotape may authenticate it." Id. at 52 (quoting Wilson, 135 N.J. at 14). Nevertheless, even if a photograph is relevant and authenticated, like any evidence, it can be excluded if its probative value is substantially outweighed by the risk of undue prejudice. N.J.R.E. 403; Brenman, 191 N.J. at 30.

We discern no abuse of discretion in the admission of the photograph of the man's face taken from the Mini-mart surveillance footage. Puccio authenticated the photograph by testifying that he had reviewed the video surveillance in its entirety multiple times. He also testified that the photograph accurately depicted what he had observed on the video. Defendant presented no evidence undermining the reliability of the photograph.

Defendant also argues that the photograph of him from the MVC was unduly prejudicial and could have been used by the jury to link him to the burglary at the Mini-mart. He, therefore, asserts that the trial judge should have given a limited instruction even though he had not requested one at trial.

When there is no objection at trial, we review for plain error and only reverse if the absence of the instruction was "clearly capable of producing an unjust result." State v. Cole, 229 N.J. 430, 456 (2017) (quoting R. 2:10-2). Here, defendant has identified no plain or prejudicial error. See N.J.R.E. 403.

16

Defendant objected to the admission of the photograph of the SUV, contending that it was blurry and that it was unduly prejudicial because it connected defendant to the burglary. The trial judge determined that the photograph of the SUV was admissible because Puccio had taken the photograph from a surveillance system at one of the stores where a person had attempted to cash one of the stolen lottery tickets. The photograph was, therefore, authenticated, and it was relevant to the jury's determination of whether defendant was the perpetrator of the burglary at the Mini-mart.

D.     The Lottery Commission Report.

An administrative analyst for the Lottery Commission testified at trial that she had prepared a report in response to a subpoena from the police. She based the report on information the Commission collects in a computer database. The database collects information on lottery tickets and includes information identifying the location and time where a particular ticket was scanned.

The State offered the report prepared by the analyst into evidence, but defendant objected, arguing it was not a business record and, therefore, inadmissible. The trial judge overruled that objection and admitted the report.

A-0680-19

Defendant argues before us that the trial court erred in admitting the report as a business record. In that regard, defendant argues that the report was inadmissible hearsay. We reject that argument.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule. State v. Kuropchak, 221 N.J. 368, 387 (2015). To qualify as a business record under N.J.R.E. 803(c)(6), a writing must be (1) made in the regular course of business, (2) within a short time of the events described in it, and (3) under circumstances indicating its trustworthiness. Id. at 387-88. Business records shown to have been kept as required possess a "circumstantial probability of trustworthiness, and therefore ought to be received in evidence." Id. at 388 (quoting State v. Matulewicz, 101 N.J. 27, 29-30 (1985)). Business records maintained in a computer system "are not treated differently from hard copies merely because they are stored electronically" unless the "opposing party comes forward with some evidence to question its reliability." Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 380 (2007).

The testimony by the administrative analyst from the Lottery Commission established that the data she used in the report was collected in the regular course

of the Commission's business, the data on the lottery tickets was gathered within a short time of the scanning of the tickets, and the data was trustworthy. Accordingly, the data in the report was based on business records.

Defendant argues that the record itself is not admissible because it was prepared for litigation. Although the report was prepared in response to the subpoena, it is still an admissible summary of information based on business records. The administrative analyst testified and explained her position, how the database was maintained, and how she extracted and compiled the information in the report from that database. That testimony established the authenticity and reliability of the information in the report. See Fried v. Aftec, Inc., 246 N.J. Super. 245, 250-51 n.3 (App. Div. 1991) (expert's summary of books and records admitted at discretion of trial judge); see also N.J.R.E. 1006 (permitting proponent to use summary to prove content of writings that "cannot conveniently be examined in court"). In that regard, the report is no different than reports prepared by banks when selecting and presenting payments or lack of payments made on mortgage loans. Courts routinely accept and rely on reports of loan payments in foreclosure actions. See New Century Fin. Servs., Inc. v. Oughla, 437 N.J. Super. 299, 326-27 (App. Div. 2014). Consequently, we discern no error in the admission of the report.

A-0680-19

E.    The Convictions for Receiving Stolen Property and Possessing Heroin.

Defendant contends that the evidence at trial was insufficient to convict him of receiving stolen property and possessing heroin. Accordingly, he argues that the trial court erred in not granting him a judgment of acquittal.

An appellate court reviews a trial court's denial of a motion of acquittal de novo. State v. Dekowski, 218 N.J. 596, 608 (2014). "In doing so, [an appellate court] conduct[s] an independent assessment of the evidence, applying the same standard as the trial court." State v. Zembreski, 445 N.J. Super. 412, 430 (App. Div. 2016). That standard calls for giving the State the benefit of all reasonable inferences in determining whether a jury could find guilt beyond a reasonable doubt. State v. Jones, 242 N.J. 156, 168 (2020) (citing State v. Perez, 177 N.J. 540, 549-50 (2003)); see also State v. Reyes, 50 N.J. 454, 458-59 (1967).

A person is guilty of receiving stolen property "if he [or she] knowingly receives or brings into this State moveable property of another knowing that it has been stolen, or believing that it is probably stolen." N.J.S.A. 2C:20-7(a). The evidence at trial included the video from the Mini-mart showing a man and a woman entering the store and taking items. The State presented a picture of the face of the man in the Mini-mart and pictures of defendant, arguing that it

20

was the same person. Although defendant disputed the State's position, there was sufficient evidence for the jury to conclude that defendant was the man who broke into the Mini-mart.

The State also presented evidence that a man had attempted to cash several of the stolen tickets shortly after the burglary. The State presented a picture of an SUV at one of the cashing locations and evidence that defendant owned a 1989 Jeep Cherokee. The State then argued that those vehicles were the same vehicles and linked defendant to the burglary and his possession of the stolen lottery tickets. Again, that evidence was sufficient for a jury to make a finding beyond a reasonable doubt that defendant knowingly stole and, therefore, received the lottery tickets.

Defendant focuses on a dispute over whether ten lottery tickets found in his Jeep were stolen. That contention goes to a credibility issue concerning why those tickets were not on the original list given by the owner of the Mini-mart. Detective Puccio explained why the tickets found in the Jeep were not on the list. He testified that the written list from the owner of the Mini-mart was not a complete list of stolen lottery tickets because he had learned about additional stolen tickets after multiple interactions with the store owner. In that regard, the numbers on the lottery tickets listed on the subpoena matched the numbers on

tickets found in defendant's car. The discrepancy presented a question for the jury to resolve.

More importantly, there was sufficient evidence to present the issue to the jury. As already pointed out, there was evidence beyond the ten lottery tickets found in defendant's Jeep that provided sufficient evidence to present to the jury the question of whether defendant had received stolen property.

Defendant also argues that there was insufficient evidence to convict him of possessing heroin, contending that Detective Puccio's testimony concerning defendant's arrest and the discovery that he possessed heroin was insufficient. Puccio admitted he was not present during the search of defendant at headquarters but testified that four wax folds of a powdery substance believed to be heroin were found on defendant's person. Thereafter, a forensic scientist employed by the New Jersey State Police explained the procedure she had used to test the substance found on defendant, which she confirmed to be heroin. Those results were documented on a lab report that the State submitted into evidence. Accordingly, the testimony by Puccio was sufficient to establish that defendant possessed four wax folds of heroin when he was arrested, and the trial court did not err in denying defendant's motion for a judgment of acquittal.

A-0680-19

F.    The Sentence.

Finally, defendant argues that the trial court erred in not finding mitigating factor six when sentencing defendant.  He contends that although the victim did not ask for restitution, he had the ability to pay and would have paid restitution.  We discern no reversible error.

An appellate court reviews sentencing determinations using a deferential standard.  State v. Grate, 220 N.J. 317, 337 (2015).  We "do[] not substitute [our] judgment for the judgment of the sentencing court."  State v. Lawless, 214 N.J. 594, 606 (2013).  Instead, a sentence will be affirmed unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

In sentencing defendant, the trial judge found aggravating factors three, the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of defendant's prior criminal record and the seriousness of the offenses for which defendant had been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the

23

need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The judge found two mitigating factors: one, defendant's conduct neither caused nor threatened serious harm, N.J.S.A. 2C:44-1(b)(1); and two, defendant did not contemplate that his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(2).

The trial court correctly rejected defendant's request for the application of mitigating factor six, that defendant compensated or will compensate the victim for the damage or injury sustained from his conduct or will participate in a community service program, N.J.S.A. 2C:44-1(b)(6). That factor applies only when a defendant pays restitution or participates in community service, neither of which the court ordered. See State v. Locane, 454 N.J. Super. 98, 128 (App. Div. 2018). The court found factor six did not apply because the owner of the Mini-mart had not requested restitution. During sentencing, the court noted the $400 cost to repair the glass that had been shattered during the burglary, but the State explained the owner of the Mini-mart no longer owned the store and had not requested restitution. Accordingly, the court did not abuse its discretion and did not commit reversible error in not finding mitigating factor six.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0680-19