949 A.2d 809

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
WILLIAM G. SWEET, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES D. DORMAN, DEFENDANT–APPELLANT.

Argued February 5, 2008—Decided June 23, 2008.

358

*Joseph P. Rem, Jr.,* argued the cause for appellant in *State v. Sweet* (*Rem Zeller,* attorneys; *James B. Seplowitz,* of counsel and on the brief).

*Annmarie Cozzi,* Assistant Prosecutor, argued the cause for respondent in *State v. Sweet* (*John L. Molinelli,* Bergen County Prosecutor, attorney).

*David A. Stefankiewicz,* argued the cause for appellant in *State v. Dorman* (*Stefankiewicz & Barnes,* attorneys).

*Michael J. Williams,* Deputy Attorney General, argued the cause for respondent in *State v. Dorman* (*Anne Milgram,* Attorney General of New Jersey, attorney).

*Leslie A. Stolbof Sinemus,* argued the cause for *amicus curiae* Association of Criminal Defense Lawyers–New Jersey in *State v. Sweet* (*Ms. Sinemus* and *Sharon Bittner Kean,* attorneys).

*Boris Moczula,* Assistant Attorney General, submitted a letter in lieu of brief on behalf of *amicus curiae* Attorney General of

New Jersey in *State v. Sweet* (*Anne Milgram*, Attorney General, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

In these separate appeals from convictions for driving while intoxicated—which we have consolidated for purposes of this opinion—we are asked to address a common issue: whether the Confrontation Clause of the Sixth Amendment, *U.S. Const.* amend. VI, and the New Jersey Constitution, *N.J. Const.* art. I, ¶ 10, bar the introduction into evidence of foundational documents concerning the operational status of a Breathalyzer®, a device used to measure a subject's blood alcohol content.[1]

We conclude that the ampoule testing certificates at issue in *State v. Sweet* and the breath testing instrument inspection certificates at issue in *State v. Dorman* are hearsay statements nevertheless admissible under the business records exception to the hearsay rule codified at *N.J.R.E.* 803(c)(6). We further conclude that those hearsay records are nontestimonial under *Crawford v. Washington*, 541 *U.S.* 36, 124 *S.Ct.* 1354, 158 *L.Ed.*2d 177 (2004), and thus are admissible under the Confrontation Clause.

I.

The relevant facts in these separate appeals are readily stated.

*State v. Sweet*

In the early morning hours of November 12, 2004, Officer John Carty of the Hillsdale Police Department observed a car driven by

---

[1] In two other opinions also decided today, we address this issue in different contexts. *See State v. Buda*, 195 *N.J.* 278, 949 *A.2d* 761, 2008 *WL* 2484616 (2008) (addressing the admission of excited utterances under *N.J.R.E.* 803(c)(2)); *State in the Interest of J.A.*, 195 *N.J.* 324, 949 *A.2d* 790, 2008 *WL* 2486748 (2008) (addressing whether hearsay statements are nontestimonial, and thus admissible, as having been provided "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 *U.S.* 813, 822, 126 *S.Ct.* 2266, 2273, 165 *L.Ed.*2d 224, 237 (2006)).

defendant William G. Sweet traveling at a high rate of speed and straddling the center double-yellow line, heading northbound on Kinderkamack Road. Officer Carty followed Sweet for a distance and observed him run a red light. At the intersection of Kinderkamack Road and Piedmont Avenue, the traffic light was red and a sign post advised that right turns on red were prohibited; undeterred, Sweet turned right on red at that intersection. Sweet then pulled into a side street, turned around, and brought the car to a stop, turning off his lights but leaving the motor running. Officer Carty, observing where Sweet had come to a stop on the side street, entered the next parallel side street and turned around. While he was doing so, Sweet pulled away and headed back towards Kinderkamack Road. Officer Carty followed, this time activating his overhead light, and eventually Sweet came to a stop on the side of the road.

When he approached the car and addressed Sweet, Officer Carty noticed that Sweet's speech was slurred, that he smelled "a very strong odor of an alcoholic beverage [on Sweet's] breath," and that Sweet's eyes were "watery and bloodshot." Officer Carty inquired "if [Sweet] had anything to drink that night[,]" Sweet replied that "he had three beers early in the night[.]" Officer Carty then administered several field sobriety tests to Sweet, whose performance was unsatisfactory. Based on those observations, Sweet was arrested, advised of his *Miranda*[2] rights at the scene, and transported to the Hillsdale police station, where Officer Carty again read the *Miranda* warnings to Sweet.[3] Tak-

---

[2] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[3] Approximately one week later, Sweet mailed a "thank you" note to Officer Carty, which was introduced into evidence at trial. It reads in full as follows:

> Thank you for picking me up last Thursday night on the DWI. I consider the experience a very positive one in my life. Since then, that night, I will never drink again. I know I have to make a change, so I have. I didn't drink for 53 and a half years. So, now I have stopped for good. I just needed something or someone to show me the way. This will not happen again. All the best for a very safe and successful career. Thanks again, Bill Sweet.

ing over for Officer Carty, Officer Donald McLaughlin of the Hillsdale Police Department twice administered a Breathalyzer® test to Sweet. The Breathalyzer® readings showed blood alcohol concentration levels of 0.10% and 0.11%, respectively, by weight of alcohol in Sweet's blood.

Sweet was tried before the Hillsdale Municipal Court on four summonses, charging him with failure to observe a traffic signal, in violation of *N.J.S.A.* 39:4–81; making a prohibited right turn, in violation of *N.J.S.A.* 39:4–115(a); failing to keep to the right, in violation of *N.J.S.A.* 39:4–82; and driving while intoxicated, in violation of *N.J.S.A.* 39:4–50(a)(1)(ii). Focusing solely on the issue relevant to this appeal, at trial Sweet challenged the admission of two "Certificates of Analysis—Breath Alcohol Reagent Ampoule," prepared by Guth Laboratories, concerning certain reagent ampoules used in the operation of the Breathalyzer® device. Sweet objected to the admission of each of the certificates on the basis that "it is hearsay, and that I don't know what grounds—what exception to the hearsay rule the Prosecutor's proffering it under." The municipal court overruled that objection, noting that "[t]here's sufficient case law which permits the introduction of the certificate of analysis of the ... [ampoule because] it is a business record[.]" Sweet was convicted on all of the violations lodged against him. He was sentenced to the minimum seven-month suspension of his driving privileges, as required by *N.J.S.A.* 39:4–50(a)(1)(ii), and additional fines, penalties, assessments, and surcharges, as well as twelve hours of mandatory detention and attendance in an Intoxicated Driver Resource Center.

Pursuant to *Rule* 3:23–8, Sweet lodged an appeal *de novo* on the record before the Superior Court challenging his conviction for driving while intoxicated. Among the matters he argued before the Law Division, Sweet claimed that, under *Crawford, supra*, he was entitled to confront and cross-examine the author of the ampoule certificates. In response, the State noted that the ampoule certificates do not address an element of the charge of

driving while intoxicated and, hence, the proscriptions of *State v. Simbara,* 175 *N.J.* 37, 811 *A.*2d 448 (2002), were inapplicable.

In a written order and decision, the Law Division again found Sweet "guilty beyond a reasonable doubt, *de novo,* of driving while intoxicated contrary to *N.J.S.A.* 39:4–50[.]" Specifically addressing Sweet's *Crawford* argument, it noted that, under *Crawford,* "out[-]of[-]court statements by witnesses that are testimonial in nature are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross[-]examine the witness." It reasoned that "the certificate of analysis was used to satisfy a condition of admissibility as to [Breathalyzer®] results[ and that i]t was not used as proof of guilt on the [driving while intoxicated] charge." It therefore concluded that "the application of the Confrontation [C]lause ... is not involved[ and] the certificate of analysis was properly admitted into evidence."[4]

Sweet appealed that ruling to the Appellate Division which, in an unpublished decision, affirmed Sweet's conviction and sentence. Noting that among the issues raised on appeal was Sweet's contention that the trial court "erred in admitting into evidence the certificate of analysis of the contents of the [ampoule]," the panel determined that it did "not find it necessary to address in detail [Sweet]'s argument directed to the admission of the certificates of the contents of the [ampoules] used[.]" According to the Appellate Division, Sweet "was convicted of driving while intoxicated based not only on the [Breathalyzer®] readings, but also on the basis of his conduct on the evening in question." In the panel's view, then, the officer's observations of Sweet's conduct when he was detained and his lay opinion that Sweet was intoxicated provided an independent basis for sustaining Sweet's conviction, *see State v. Bealor,* 187 *N.J.* 574, 585, 902 *A.*2d 226 (2006) (explaining that "[s]ince 1924, ... New Jersey has permitted the

---

[4] The Law Division granted Sweet's "motion for a stay of the sentence pending determination of [his] appeal[.]"

use of lay opinion testimony to establish alcohol intoxication"), thus obviating the need to address the *Crawford* argument Sweet advanced.

In his petition for certification, Sweet couched the question presented as "[w]hether the Appellate Division erred in failing to overturn [Sweet]'s per se conviction for [driving while intoxicated] where certain lab certificates were admitted into evidence over [Sweet]'s objection based on his Sixth Amendment right to confront the witnesses against him[.]" We granted that petition. *State v. Sweet*, 191 *N.J.* 318, 923 *A.*2d 232 (2007). We also granted leave to appear as amicus curiae to the Association of Criminal Defense Lawyers—New Jersey, and to the Attorney General of New Jersey.

### State v. Dorman

At approximately 11:54 p.m. on September 10, 2004, Detective Corporal Edward Gorski of the Wildwood Crest Police Department was on motor patrol traffic detail, parked in a restaurant parking lot on the 5400 block of Atlantic Avenue. Cpl. Gorski observed defendant James Dorman and Frederick Luzier riding their motorcycles;[5] Dorman and Luzier were stopped at the intersection of Cresse and Atlantic Avenues heading southbound. While stopped at the traffic light, Dorman "started to spin [his] back wheel and create a cloud of white smoke." Once the light turned green, both Dorman's and Luzier's "motorcycles accelerated from the light passing [Cpl. Gorski] at a high rate of speed[,]" a speed he estimated as "well over the speed limit of 25 miles an hour." Cpl. Gorski activated his emergency overhead lights and siren, and gave pursuit.

He caught up with Dorman when Dorman turned onto East Morning Glory Road, pulled into a driveway, and began "doing

---

[5] Luzier was charged, tried and convicted jointly with Dorman; they also jointly appealed their municipal court convictions to the Law Division. Luzier, however, has not appealed further and, hence, the additional circumstances giving rise to his convictions and sentence are not relevant to Dorman's appeal.

360's[,]" thus "creating a large cloud of white smoke" and being "[v]ery loud. Very, very loud." Cpl. Gorski radioed for assistance and, once additional officers arrived, he approached Dorman. Addressing Dorman, Cpl. Gorski noted that Dorman "spoke in a slurred speech and there was an odor of alcohol present about his breath." More specifically, Cpl. Gorski described that "there was a strong intense odor of alcoholic beverage about his breath" and that "[h]is eyes—his eyes were—were not open, they were kind of squinty, closed. When I did get to look at them they appeared to be a little blood shot." While Cpl. Gorski asked if Dorman had been drinking, Dorman replied that "he'd had a few beers." After administering field sobriety tests to Dorman, Cpl. Gorski concluded that Dorman "was impaired and ... placed him under arrest for operating under the influence of intoxicating beverage—beverage or drug."

Cpl. Gorski then transported Dorman to police headquarters, where he was advised of his *Miranda* rights and where Cpl. Gorski twice administered a Breathalyzer® test. Dorman's Breathalyzer® readings twice showed a blood alcohol concentration level of 0.14% by weight of alcohol in his blood, almost double the minimum blood alcohol concentration level of 0.08% by weight of alcohol in the blood required to sustain a conviction for driving while intoxicated. Dorman was charged with violating *N.J.S.A.* 39:4–50(a), the driving while intoxicated statute.

Dorman was tried before the Wildwood Crest Borough Municipal Court. Again focusing solely on the issue relevant to this appeal, at trial Dorman challenged the admissibility of two "Breath Testing Instrument Inspection Certificates" tendered by the State that bracketed the time period during which Dorman's Breathalyzer® tests were conducted. Dorman asserted that "these documents are testimonial in nature, at least in part," and, therefore, inadmissible under the Confrontation Clause. Citing *Crawford,* he argued that "it doesn't matter whether or not there are hearsay exceptions to ... any other rule of evidence[ because t]he right to confront witnesses against you trumps any traditionally established or codified rule of evidence[.]"

The municipal court overruled Dorman's objections to the admissibility of the inspection certificates. It ultimately found Dorman guilty beyond a reasonable doubt of driving while intoxicated, in violation of *N.J.S.A.* 39:4-50(a)(1)(ii), based both on the Breathalyzer® readings and on Cpl. Gorski's observations. Like Sweet, Dorman too was sentenced to the minimum seven-month suspension of his driving privileges required by law, and to additional fines, penalties, assessments, surcharges and twelve hours of mandatory detention and attendance in an Intoxicated Driver Resource Center. The municipal court denied Dorman's application to stay the license suspension portion of his sentence, noting that Dorman could seek such relief from the Superior Court.[6]

On an appeal *de novo* on the record to the Superior Court, the Law Division rejected Dorman's *Crawford* challenge to the inspection certificates and, based on the entire record, concluded that "[t]he appeals are denied[ and t]he lower court's conclusions are affirmed."

Dorman's next appeal also was unavailing. Before the Appellate Division Dorman claimed that, among other things, the breath testing instrument inspection certificates should not have been admitted over his objection. In a published opinion, the Appellate Division disagreed. *State v. Dorman,* 393 *N.J.Super.* 28, 922 *A.*2d 766 (App.Div.2007).[7] The panel rejected Dorman's *Crawford* claims, explaining that

decisions [applying *Crawford*] have a common element triggering a defendant's right of confrontation: the State's use of a document created for the specific purpose of establishing an essential element of the offense. By contrast, the

6 Dorman did seek a stay of his driver's license suspension from the Superior Court, which was granted on June 2, 2005. Thus, before his appeal was heard in the Superior Court, Dorman's license in fact was suspended for almost two months, consisting of the period between the date of his municipal court conviction (April 7, 2005) and the date the stay was entered (June 2, 2005).

7 Dorman also claimed that (1) there was no reasonable and articulable basis for the traffic stop resulting in his arrest for driving while intoxicated; (2) the

> certificates of operability at issue here were not created with any specific case in mind. These operability certificates are intended to document the regular business function of maintaining a particular breathalyzer machine. As such, these documents are properly admissible as a business record under *N.J.R.E.* 803(c)(6). [*Id.* at 33, 922 *A.*2d 766.]

It thus determined that the inspection certificates at issue are hearsay statements admissible under the business records exception of the hearsay rule and that they are nontestimonial for *Crawford* purposes. *Ibid.* The panel emphasized that "[o]ther jurisdictions that have considered this issue have come to a similar conclusion" and that "the Law Division reached a similar conclusion in *State v. Godshalk,* 381 *N.J.Super.* 326, 333, 885 *A.*2d 969 (Law Div.2005)[,]" noting that "[w]e approve the holding in *Godshalk* to the extent that it is consistent with the conclusion we reach here." *Id.* at 33–34, 885 *A.*2d 969 (footnote omitted). It therefore affirmed Dorman's conviction for driving while intoxicated.

Dorman filed a petition for certification, which was granted "limited solely to the question of whether in light of [*Crawford* ], the admission of the breathalyzer machine certificate of operability violated the Confrontation Clause of the United States Constitution." *State v. Dorman,* 192 *N.J.* 475, 932 *A.*2d 26 (2007).

## II.

Both Sweet and Dorman argue that the Breathalyzer® foundational documents at issue here—the ampoule testing certificates at issue in *State v. Sweet* and the breath testing instrument inspection certificates at issue in *State v. Dorman*—are either inadmissible hearsay statements or are testimonial and, thus, violate the Confrontation Clause.

---

Breathalyzer® results should not have been admitted because (a) the protocol banning hand-held transmitters from close proximity to the device was not followed, and (b) the protocol requiring certain observational periods was not followed; and (3) the evidence was insufficient to sustain a conviction. The Appellate Division "reject[ed] these arguments and affirm[ed] substantially for the reasons expressed by [the Law Division judge] in her opinion delivered from the bench on December 1, 2005." *Id.* at 29–30, 922 *A.*2d 766.

In opposition, the State asserts that both sets of certificates properly qualify under the business records exception to the hearsay rule and, because they are foundational and do not speak to an element of the underlying offense, they are nontestimonial. The State also raises strong policy considerations: it cautions that, given the sheer volume of driving while intoxicated prosecutions conducted, numbering more than 25,000 each year, requiring the testimony of the authors of foundational certificates—in contrast with the Breathalyzer® blood alcohol content reports that establish the offense—is impractical.

Amicus, the Association of Criminal Defense Lawyers—New Jersey, categorically argues that the Confrontation Clause "prohibits the State from admitting into evidence a certificate which purports to show that the breathalyzer machine used to test a defendant's blood alcohol level was working properly without giving the defendant the opportunity to cross-examine the person who conducted the examination and prepared the certificate."

Amicus, the Attorney General of New Jersey, urges that the admission into evidence of foundational documents relating to the working order of a Breathalyzer®, even when unaccompanied by testimony from the foundational documents' preparers, does not violate the Confrontation Clause because those documents are not testimonial within the meaning of *Crawford.*

We follow the analytical framework we first explained in *State v. Chun,* 194 *N.J.* 54, 943 *A.*2d 114 (2008), and which we apply in *State v. Buda,* 195 *N.J.* 278, 949 *A.*2d 761, 2008 *WL* 2484616 (2008), also decided today. Therefore, we consider first whether the foundational documents at issue are hearsay statements and, if so, whether they qualify under an appropriate exception to the hearsay rule. If those foundational documents are admissible under the hearsay rule, we then address whether they are testimonial and thus run afoul of the Confrontation Clause's guarantee.

### III.

Recently, in *State v. Chun,* we explained that

[t]he *Crawford* paradigm, therefore, begins with an analysis of whether any particular piece of evidence is admissible as a matter of complying with the rules of evidence. Typically, the issue arises in the context of hearsay and the exceptions thereto. The model adopted in *Crawford* then considers whether the particular evidence is "testimonial" within the meaning of the Confrontation Clause, for if it is, then the fact of admissibility for purposes of the exceptions to the hearsay rules is insufficient. *See Crawford, supra,* 541 *U.S.* at 60–61, 124 *S.Ct.* at 1369–70, 158 *L.Ed.*2d at 198–99. That is to say, if the evidence is testimonial, reliability as defined by the exceptions to the hearsay rules does not equate with, and cannot substitute for, confrontation through cross-examination.

[*Supra,* 194 *N.J.* at 138–39, 943 *A.*2d 114.]

Therefore, "[i]n order to correctly apply the *Crawford* analysis ... we must consider first whether the particular evidence is admissible under the ordinary rules of evidence and then whether it is testimonial, thus requiring the declarant to be made available for cross-examination." *Id.* at 139, 943 *A.*2d 114. It is to that first task—"whether the particular evidence is admissible under the ordinary rules of evidence"—that we now turn.

### A.

■ To the extent they deemed necessary, the courts below concluded that the ampoule testing certificates at issue in *State v. Sweet* and the breath testing instrument inspection certificates at issue in *State v. Dorman* are hearsay statements, but that they qualify for admission under the business records exception to that rule. We agree.

■ As *State v. Buda* explains,

*N.J.R.E.* 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" and *N.J.R.E.* 802 starkly explains that "[h]earsay is not admissible except as provided by [the *Evidence Rules*] or by other law." Stated differently, "the hearsay rule applies when a declaration is offered to prove the truth of the statement attributed to the declarant." *State v. Long,* 173 *N.J.* 138, 152, 801 *A.*2d 221 (2002). The opposite also holds: "if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no exception to the hearsay rule is necessary to introduce that evidence at trial." *Ibid.* (citation omitted).

[*Supra,* 195 *N.J.* at 292, 949 *A.*2d at 770.]

To be sure, the State introduced both the ampoule testing certificates and the breath testing instrument inspection certificates at

issue as proof that the Breathalyzer® device in use was in good working order. Thus, those certificates and their contents constitute hearsay statements, as they are, no doubt, "offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). In those circumstances, unless an exception to the hearsay rule is applicable, those certificates simply are inadmissible. *N.J.R.E.* 802.

■ It is plain that those certificates represent records of regularly conducted activity and therefore qualify under the business records exception to the hearsay rule. *N.J.R.E.* 803(c)(6) provides that "[t]he following statements are not excluded by the hearsay rule:

[a] statement contained in a writing or other record of acts, events, conditions, and, subject to *Rule* 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy."

The standard for the admissibility of business records has remained constant. In order to qualify under the business record exception to the hearsay rule, the proponent must satisfy three conditions:

First, the writing must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Finally, the source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence.

[*State v. Matulewicz*, 101 *N.J.* 27, 29, 499 *A.2d* 1363 (1985).[8]]

As we recently held in *Chun*, those certificates "qualify as business records in the traditional sense" because "[f]or purposes

---

[8] Although *Matulewicz* preceded the adoption of *N.J.R.E.* 803(c)(6) and instead interpreted former *Evidence Rule* 63(13), "*N.J.R.E.* 803(c)(6) replaces without substantially changing 1967 rule 63(13)[.]" Biunno, *Current N.J. Rules of Evidence*, comment 1 on *N.J.R.E.* 803(c)(6) (2007). The sole differences between the two are that "*N.J.R.E.* 803(c)(6) adds to 63(13) the requirement that the making of such a writing was the regular practice of the relevant business and explicitly authorizes the trial judge to reject a record which is proffered under

of the hearsay exception, we can describe all of these documents as being records of tests of the device, ... or of the chemical composition of the solutions used to either perform the control tests or calibrate the machine." *Supra,* 194 *N.J.* at 142, 943 *A.*2d 114. Both the ampoule testing certificates and the breath testing instrument inspection certificates at issue (1) are made in the regular course of business, (2) are prepared reasonably contemporaneously with the events they describe, and (3) no credible challenge has been presented to their trustworthiness as "nothing in this record ... suggests that any of these foundational documents is subject to manipulation by the preparer." *Id.* at 143, 943 *A.*2d 114. Therefore, "we do not regard them as being anything other than business records that are ordinarily reliable." *Id.* at 142, 943 *A.*2d 114.

We therefore conclude that the ampoule testing certificates and the breath testing instrument inspection certificates at issue, although clearly hearsay statements, nevertheless qualify for admission into evidence under the business records exception to the hearsay rule. *N.J.R.E.* 803(c)(6). We turn now to whether, although admissible hearsay, admission of those foundational documents into evidence against a defendant violates the Confrontation Clause.[9]

### B.

Any analysis of *Crawford's* applicability to the admission of the ampoule testing certificates and the breath testing instrument

---

this exception if the purpose for its preparation or other indicia indicate to him that it is untrustworthy." *Ibid.*

[9] We acknowledge here, as we did in *Chun,* that "we have not specifically held that the Confrontation Clause applies to quasi-criminal proceedings or that it applies generally to DWI matters." *Supra,* 194 *N.J.* at 137 n. 41, 943 *A.*2d 114. We conclude as we did in *Chun:* "In light of the manner in which we [] address[] the potential impact of *Crawford* on the evidence we here consider, we need not directly consider this constitutional question." *Ibid.*

inspection certificates at issue must start with the observation that "the Court in *Crawford* noted that business records are considered 'by their nature' to be nontestimonial, *see* [541 *U.S.*] at 56, 124 *S.Ct.* at 1367, 158 *L.Ed.*2d at 195, and therefore their admission into evidence would not implicate the Confrontation Clause's guarantees." *Chun, supra,* 194 *N.J.* at 139, 943 *A.*2d 114. That said, because we bear an independent obligation to gauge the constitutionality of our processes, "we do not regard the Court's apparent exclusion of all business records from the Constitution's protective scope to be dispositive of the issues before us." *Ibid.*

The threshold inquiry *Crawford* requires is whether the challenged hearsay statement is testimonial. This is so because "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford, supra,* 541 *U.S.* at 59, 124 *S.Ct.* at 1369, 158 *L.Ed.*2d at 197. As there was no proof that the declarants in respect of the ampoule testing certificates or the breath testing instrument inspection certificates at issue were unavailable,[10] or that either Sweet or Dorman had a prior opportunity to cross-examine, one issue and only one issue remains: are those certificates testimonial? We conclude that they are not.

The logic that determines whether a hearsay statement is testimonial is rooted in the Confrontation Clause itself. As *Crawford* describes, "[t]he text of the Confrontation Clause ... applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Id.* at 51, 124 *S.Ct.* at 1364, 158 *L.Ed.*2d at 192 (citations omitted). Expounding on that theme, it explains that that "'[t]estimony,' in turn, is typically '[a] solemn declaration or

---

[10] Defense counsel in *State v. Dorman* noted for the record that the author of the breath testing instrument inspection certificates at issue in that case, State Trooper Adam Stanks, was present in the courtroom during trial, and that counsel "can ask him anything I want to ask him." Yet, Tpr. Stanks was never called to testify by either the prosecution or the defense, for which no explanation has been tendered.

affirmation made for the purpose of establishing or proving some fact.'" *Ibid.* (citation omitted). *Crawford* then tethered the concept of "testimony" in a criminal context to proofs attendant to the elements of the offense charged, noting that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Ibid.* Without defining with precision the contours of what is or is not testimonial, *Crawford* cautioned that the universe of what is testimonial is limited, emphasizing that "[t]he constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a *specific* type of out-of-court statement." *Id.* at 51, 124 *S.Ct.* at 1364, 158 *L.Ed.*2d at 192–93 (emphasis supplied).

In the final analysis, neither the ampoule testing certificates nor the breath testing instrument inspection certificates at issue "relates to or reports a past fact and none of them is generated or prepared in order to establish any fact that is an element of the offense." *Chun, supra,* 194 *N.J.* at 144, 943 *A.2d* 114. In this context, the distinction we earlier drew in *State v. Simbara* between those business records that directly address the crux of a criminal prosecution and those on its periphery is controlling:

A laboratory certificate in a drug case [setting forth that the substances at issue in that criminal case are, in fact, controlled dangerous substances] is not of the same ilk as other business records, such as an ordinary account ledger or office memorandum in a corporate-fraud case. Those latter documents have not been prepared specifically for the government's use in a potential criminal prosecution. In contrast, the analyst prepares the laboratory certificate at a prosecuting agency's request for the sole purpose of investigating an accused. Because [that laboratory] certificate is singularly important in determining whether the accused will be imprisoned or set free, we must be sensitive to Sixth Amendment interests whenever a defendant preserves those interests for trial.

[175 *N.J.* 37, 49, 811 *A.2d* 448 (2002).]

We reaffirm that "[t]he fact that [foundational documents] may be used to demonstrate that a device, which was used to conduct the breath tests for a particular defendant, was in good working order does not transform them into evidence of an element of the offense nor make them testimonial in the constitutional sense."

*Chun, supra,* 194 *N.J.* at 144, 943 *A.*2d 114. We discern no meaningful distinction between the foundational documents required for the admission of Breathalyzer® blood alcohol test results and those we recently approved in *Chun* in respect of Alcotest® blood alcohol test results. Like *Chun,* "we perceive both in the Constitution itself and in *Crawford,* ample room for admissibility of these foundational documents consistent with protecting defendants' rights." *Ibid.* We therefore conclude that neither the ampoule testing certificates nor the breath testing instrument inspection certificates at issue are testimonial within the meaning of the Confrontation Clause, as embodied in either the federal or our State Constitutions. *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10.

## IV.

The judgments of the Appellate Division in both *State v. Sweet* and *State v. Dorman* are affirmed.[11]

*For affirmance–Sweet*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*For affirmance–Dorman*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.

---

[11] To the extent the driver's license suspensions imposed on either Sweet or Dorman are still subject to a stay, our ruling operates to dissolve the same and reinstate the sentences as imposed.