**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1592-17T4
               A-2226-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

HYKEEM T. MARTIN,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

DOMINIQUE WASHINGTON,
a/k/a DOMINQUE MALIK
WASHINGTON,

    Defendant-Appellant.

_____

Argued February 26, 2020 — Decided May 5, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No.16-08-1897.

Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for appellant Hykeem T. Martin (Joseph E. Krakora, Public Defender, attorney; Alyssa A. Aiello, of counsel and on the brief).

Richard Sparaco, Designated Counsel, argued the cause for appellant Dominique Washington (Joseph E. Krakora, Public Defender, attorney; Richard Sparaco, on the brief).

Frank Muroski, Deputy Attorney General, argued the cause for respondent in A-1592-17 and in A-2226-17 (Gurbir S. Grewal, Attorney General; Frank Muroski, of counsel and on the briefs).

PER CURIAM

Defendants Hykeem T. Martin and Dominique Washington appeal from the September 29, 2017 judgments of conviction after a jury found them guilty of first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1). We write one opinion encompassing both appeals. Martin was sentenced to fifteen years in prison, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Washington was sentenced to seventeen years in prison, subject to NERA. The convictions were based on circumstantial evidence and both defendants were acquitted of murder. After a thorough consideration of the issues raised on appeal, we affirm.

## I. Facts.

At about 9:40 p.m. on July 3, 2014, the New Jersey State Police discovered the victim, later identified as Vincent Williams, lying face up on a dirt road with gunshot wounds to his head, chest, neck and arm. A cellphone, several nine-millimeter bullet casings and part of a broken rubber car antenna were found near the body. A silver Infiniti, registered to the victim's mother, was parked thirty-three feet away with its headlights on, windows down, engine running, and one door open. The antenna piece did not belong to this car.

A cellphone and grocery bags from the Dollar General were inside the car. A container of ice cream that "wasn't completely melted yet" could be seen inside one of the bags. About ten minutes from the scene was a Dollar General store. Surveillance footage showed the victim entering the store at 7:55 p.m. and leaving at 8:04 p.m.

Cellphone records revealed that the victim called and texted defendant Martin at various times on the date of the incident. One of the last calls the victim made was to Martin's home phone at 8:07 p.m. It was too short for a conversation. Cellphone tower records reflect that at 8:23 p.m., Martin's cellphone pinged off a tower about six minutes away from where the victim's body was found. Security footage obtained from a bar twenty minutes from the

scene showed that on the evening of the incident, Martin and Washington were together at 8:47 p.m. Soon after, they met with two women nearby until approximately 9:30 p.m. Around 10:00 p.m., security footage showed Martin and his co-defendant Washington together again at a liquor store. While Washington had been wearing shorts in the footage from the bar, he was wearing jeans in the liquor store.

One of the victim's close friends testified that Martin owed the victim money for a Honda Accord he purchased from the victim. On the day of the incident, the friend drove the victim to Martin's house sometime in the afternoon, but Martin was not home.

On July 7, 2014, four days after the incident, a Honda Accord with a missing antenna was towed from the side of the road in Vineland. Officers learned the car was registered to Martin and obtained a warrant to search the car. A piece of a broken antenna was found inside the car. An expert concluded that the two broken antenna pieces "were at one time a single item." One of the women Martin and Washington were with on the night of the incident testified that the reception on the car radio was poor, consistent with a broken antenna. Officers also found Martin's driver's license and shorts in the car.

4

That same day the Honda was towed, Washington provided a voluntary taped statement to the police. He explained that he had been staying with Martin, his cousin, for "close to two weeks," and around 5:00 or 6:00 p.m. on the day of the murder, he and Martin were playing basketball and then decided to go to Atlantic City, before coming back to the area to meet with two women.

Neither Martin nor Washington testified at trial. A woman who lived about a half mile from the crime scene and was interviewed by the police was the only witness Martin called. She testified that between 9:30 p.m. and 9:45 p.m. on the night of the incident, she heard what she thought were fireworks, until the police informed her that they were gunshots. Washington did not call anyone.

Martin raises the following arguments on appeal:

> POINT I: DEFENDANT'S CONVICTION FOR CONSPIRACY CANNOT STAND BECAUSE THE CONSPIRACY CHARGE WAS FUNDAMENTALLY FLAWED.
>
> A. BY IMPORTING THE MERE PRESENCE PORTION OF THE MODEL ACCOMPLICE CHARGE INTO THE JURY INSTRUCTION ON CONSPIRACY, THE TRIAL COURT ENCOURAGED THE JURY TO ERRONEOUSLY EQUATE CO-PARTICIPATION WITH CONSPIRACY AND RETURN A VERDICT OF GUILT WITHOUT FINDING AN ACTUAL AGREEMENT.

A-1592-17T4

B. THE JURY INSTRUCTIONS ON CONSPIRACY TO COMMIT MURDER IMPROPERLY EXPANDED THE RANGE OF POSSIBLE CONSPIRACIES BEYOND AN AGREEMENT TO PURPOSEFULLY KILL.

POINT II: DEFENDANT'S RIGHT TO CONFRONTATION AND THE RULES OF EVIDENCE WERE VIOLATED WHEN THE TRIAL COURT PERMITTED THE STATE TO INTRODUCE INTO EVIDENCE TELEPHONE RECORDS OBTAINED FROM AT&T AND ALLOWED [THE] DETECTIVE TO TESTIFY ABOUT HISTORICAL CELLULAR SITE DATA CONTAINED THEREIN.

A. THE STATE, AS THE PROPONENT OF THE EVIDENCE, FAILED TO CARRY ITS BURDEN TO ESTABLISH ITS ADMISSIBILITY AS A BUSINESS RECORD.

B. [THE DETECTIVE] DID NOT HAVE SUFFICIENT PERSONAL KNOWLEDGE OF HISTORICAL CELL TOWER DATA TO TESTIFY RELIABLY ON THE SUBJECT.

POINT III: THE STATE PRESENTED INSUFFICIENT EVIDENCE TO PROVE A CONSPIRACY TO COMMIT MURDER.

Washington raises the following issues on appeal:

POINT I: DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO THE ERROR OF THE TRIAL COURT IN ADMITTING INTO EVIDENCE EXHIBITS THAT WERE NOT AUTHENTICATED UNDER N.J.R.E. 901.

6

A.     THE SURVEILLANCE VIDEOS WERE NOT AUTHENTICATED AND THEREFORE WERE INADMISSIBLE IN EVIDENCE.

B.     TELEPHONE RECORDS OF THE VICTIM AND THE CO-DEFENDANT WERE IMPROPERLY ADMITTED INTO EVIDENCE UNDER THE BUSINESS RECORDS EXCEPTION AND WERE NOT AUTHENTICATED, THUS DEPRIVING THE DEFENDANT THE RIGHT TO A FAIR TRIAL.

C.     TEXT MESSAGES PURPORTEDLY BETWEEN THE VICTIM AND THE CO-DEFENDANT WERE IMPROPERLY ADMITED INTO EVIDENCE BECAUSE THEY WERE NOT AUTHENTICATED.

D.     EACH POINT RAISED ABOVE IN ITS OWN RIGHT IS GROUNDS FOR THE COURT TO REVERSE THE DEFENDANT'S CONVICTION, BUT IF A POINT IN AND OF ITSELF DOES NOT RISE TO THE LEVEL TO FORM THE BASIS FOR REVERSAL, IN THE ALTERNATIVE, THE CUMULATIVE EFFECT OF THE EVIDENTIARY ERRORS DENIED THE DEFENDANT THE RIGHT TO A FAIR TRIAL.

POINT II:  THE DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN A DETECTIVE, WITH NO PERSONAL KNOWLEDGE OF THE DEFENDANTS, WAS PERMITTED TO TESTIFY AS TO THE IDENTITY OF BOTH DEFENDANTS PURPORTEDLY DEPICTED ON SURVEILLANCE VIDEO.

POINT III:  EVIDENCE THAT CO-DEFENDANT MARTIN HAD A DISPUTE WITH THE VICTIM OVER MONEY OWED TO THE VICTIM FOR THE

7

SALE OF A VEHICLE WAS INADMISSIBLE HEARSAY, LACKED ANY FOUNDATION, AND WAS UNDULY PREJUDICIAL TO THE DEFENDANT, THEREBY DENYING HIM THE RIGHT TO A FAIR TRIAL.

POINT IV: THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED FINDING OF NOT GUILTY AT THE CONCLUSION OF THE STATE'S CASE IN CHIEF.

POINT V: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT AND NEW TRIAL BASED UPON THE INSUFFICIENCY OF THE EVIDENCE.

POINT VI: THE SENTENCE OF SEVENTEEN YEARS FOR CONSPIRACY TO COMMIT MURDER WAS EXCESSIVE.

## II. Jury Charge.

When a defendant fails to object to a perceived error in the jury charge, we review for plain error. State v. Funderburg, 225 N.J. 66, 79 (2016). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "Plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that

of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

A jury "charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005). The effect of any error "must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting Chapland, 187 N.J. at 289).

Martin argues that the trial court committed plain error when incorporating into the model conspiracy charge "mere presence" from the model accomplice liability charge. He contends that this created "an inherent danger of confusion" for the jury, who were misled into believing that participation is an element of conspiracy. He notes that by the court adding to the conspiracy charge that "[t]here does not have to be [a] verbal agreement by all who were charged," the court improperly suggested that an agreement is not necessary for a conspiracy. Martin also argues that because the jury was instructed that participation is "a circumstance to be considered with the other evidence in determining whether he acted as a conspirator," such language "encouraged [the jury] to sidestep the element of agreement."

While conspiracy does not require participation in a crime, the court adapted the following language from the accomplice liability charge, instructing the jury:

> To prove the defendant's criminal liability, the State does not have to prove the conspiracy by direct evidence or a formal plan to commit a crime. There does not have to be a verbal agreement by all who are charged. The proof may be circumstantial. Participation and agreement can be established from conduct as well as the spoken word. Mere presence at or near the scene does not make one a participant in the crime, nor does the failure of a spectator to interfere make him a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he acted as a conspirator. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt, there must exist a community of purpose, an actual participation in the crime committed. While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, proof that one is present at the scene of the commission of the crime without disproving or opposing it is evidence from which in connection with other circumstance it is possible for the jury to infer that he acted as a conspirator to commit the crime. It depends upon the totality of circumstances as those circumstances appear from the evidence.

The court incorporated the language with the explicit permission of all parties. Outside the presence of the jury, the court stated: "I invite the parties' attention to page [fifteen] of the charge and the paragraph beginning mere

presence." After the court asked the parties for their "thoughts on the court's draft and amendment to the conspiracy charge," they all stated that they had no objection. As noted by the State, both defense attorneys emphasized in summation that mere presence is not proof of guilt.

"[A]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting Reddish, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)). Instead of prejudice, the mere presence language strengthened the defendants' argument. Indeed, there was no evidence of actual participation despite the State's argument that Martin and Washington were near the scene.

11

Martin also argues that the trial court erred in failing to emphasize "that a conspiracy to murder requires a purposeful agreement to kill." He asserts the jury was improperly instructed that it need only find that the defendants had the purpose to commit murder. Because murder consists of causing serious bodily injury resulting in death as well as purposefully or knowingly killing, Martin notes the jury was permitted to convict him of "conspiracy to murder on less than the elements required by law."

Under the facts of this case, this argument is strained. The victim was shot five times in crucial areas of his body. The theoretical issue of whether a conspirator might have sought only to commit serious bodily injury does not fit with these facts. As directed by our Supreme Court, the trial court read to the jury the model conspiracy charge when instructing "that the defendants' purpose [to enter into the agreement] was to promote or facilitate the commission of the crime of murder." See Model Jury Charges (Criminal), "Conspiracy (N.J.S.A. 2C:5-2)" (rev. Apr. 12, 2010); State v. R.B., 183 N.J. 308, 325 (2005) (emphasizing "that, insofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed").

The court did not charge accomplice liability. Although the jury could have inferred, as the State argued, that Washington did the shooting because he

changed his clothes, and Martin had a motive, no evidence clearly indicated which defendant was the shooter. Without a charge of accomplice liability, Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6)" (rev. June 11, 2018) that if they both participated and shared the intent to kill, they were both equally guilty, the jury might well have had a reasonable doubt as to which defendant actually shot the victim.

The conspiracy charge, which incorporated elements of accomplice liability, was not a standard charge, but in the context of these facts helped the defendants avoid a more serious guilty verdict. In light of defense counsels' agreement to the charge, we discern no harmful error.

### III. Evidence.

Martin and Washington reassert the objections they made at trial, arguing that during the direct examination of the detective, the trial court erred in admitting into evidence cellphone records under the business records exception to hearsay, N.J.R.E. 803(c)(6), lay witness testimony as to historical site data, N.J.R.E. 702, and unauthenticated surveillance videos, N.J.R.E. 901.

Washington also raises for the first time on appeal the following evidentiary issues, which he argues deprived him of his right to a fair trial: the authenticity of the text message screenshot between the victim and Martin, the

13

detective's lay opinion identifications and the testimony that Martin owed the victim money for a car.

"[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (alteration in original) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "However, '[w]hen the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence,' our review is de novo." Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) (alteration in original) (quoting Pressler & Verniero, Current N.J. Court Rules, comment 4.6 on R. 2:10-2 (2012)).

## A. Cellphone Records.

To qualify as a business record, the proponent of the evidence must satisfy three conditions:

> First, the writing must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Finally, the source of the information and the method

14

and circumstances of the preparation of the writing must justify allowing it into evidence.

[State v. Sweet, 195 N.J. 357, 370 (2008) (quoting State v. Matulewicz, 101 N.J. 27, 29 (1985)); N.J.R.E. 803(c)(6).]

These conditions "may be met by the kind of proof that would satisfy a trial judge in a hearing under Rule 104(a), including proof presented in affidavit form." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment on N.J.R.E. 803(c)(6) (2020). "[T]estimony of the custodian [of the records] or other qualified witness" is "not require[d] . . . as a condition for admission of business records." Ibid.

During a pretrial hearing, the State presented a sworn affidavit from the cellphone carrier stating that the phone records were "kept in the ordinary course of [its] business and [were] maintained and routinely relied on in the course of the duties of the records custodian and the legal compliance analyst of that organization." Despite both defense counsels' objections, the court concluded that "the affidavit satisfie[d] . . . the trustworthiness and the reliability of these documents." In finding the State satisfied its burden that the phone records qualified as a business record, the court did not abuse its discretion.

## B. Historical Site Data.

Pursuant to N.J.R.E. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." While our courts are silent, the trial court noted that the Third Circuit has held that no expert testimony is needed in reporting a cell tower ping. See United States v. Kale, 445 F. App'x 482, 485-86 (3d Cir. 2011) (holding that because the lay witness was not testifying to defendant's precise location, but was rather reading and interpreting "records detailing the locations of cell phone towers used to carry out his phone calls," no "scientific, technical, or other specialized knowledge" was needed to testify as to the operation of the towers).

Martin argues the detective lacked the knowledge and expertise "to testify to the location of the cell site tower[s] and which cellphone communicated with each tower." The detective's testimony was limited to the information in his report. Using the latitude and longitude coordinates, he was able to determine what cell tower pinged when a call was made from a particular phone. We agree with the trial court that doing so requires no special skill. The court acted within its discretion when determining that an expert was not needed to testify.

A-1592-17T4

## C. Surveillance Videos.

"[A] videotape qualifies as a writing" under N.J.R.E. 801(e) and must be "properly authenticated" before being admitted. State v. Wilson, 135 N.J. 4, 17 (1994). N.J.R.E. 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." The authentication "rule does not require absolute certainty or conclusive proof. The proponent of the evidence is only required to make a prima facie showing of authenticity." State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999). "Once a prima facie showing is made, the writing or statement is admissible, and the ultimate question of authenticity of the evidence is left to the jury." Ibid.

"Authentication of a videotape is much like that of a photograph, that is, testimony must establish that the videotape is an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place." State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996). The photographer or videographer need not testify "because the ultimate object of an authentication is to establish its accuracy or correctness." Wilson, 135 N.J. at 14. Thus, "any person with the requisite knowledge of the facts represented in the photograph or videotape may authenticate it." Ibid.

A-1592-17T4

The detective explained that upon "retriev[ing]" and "secur[ing] as evidence" the surveillance videos, he verified the date and time on the videos by checking his cellphone. Washington argues that the N.J.R.E. 901 requirements were not satisfied because the detective failed to explain the manner in which he retrieved the videos and presented no evidence to confirm the accuracy of his cellphone. The trial court explained that "the issue raised by the defense goes to the weight and credibility of the exhibit, not admissibility." We agree and find no abuse of discretion.

### D. Text Message.

At trial, the parties disputed the admissibility of a screenshot of a text message sent from the victim to Martin on the day of the incident as an exception to hearsay. The text message was sent at 5:46 p.m. and read "yo ware you at." The court admitted the screenshot under the N.J.R.E. 803(c)(3) state of mind exception and, although an issue as to the authenticity of the image was not raised, the court explained that it found "a sufficient basis as to its authenticity and its retrieval and its reliability." Washington now argues this finding was unsupported.

A detective from the computer crimes investigation team testified that she examined the victim's cell phone and then proceeded to take a photograph of the

text message using a software called Eclipse. She explained that the software is used when data cannot be digitally extracted from the phone. She then identified the cell phone number and photograph of the text.

We agree with the trial court and find this testimony sufficiently authenticated the text message screenshot.

### E.  Identifications.

For the first time on appeal, Washington argues that he was deprived of his right to a fair trial when the trial court allowed the detective to identify him, Martin, Martin's car, and the victim on the surveillance videos.

When playing the surveillance videos from the Dollar General, bar and liquor store, the State paused the videos at various times, asking the detective to testify as to what he observed. In response, the detective identified by name the victim, Martin, and Washington and testified as to what Martin and Washington were wearing. He also identified the car in the videos as "Mr. Martin's vehicle" and explained that he was unable to see a vehicle antenna on the car.

Washington asserts that "[a]llowing a witness who is unfamiliar with a defendant to opine on his resemblance to a subject in a video is impermissible." He cites to United States v. Fulton, 837 F.3d 281, 297 (3d Cir. 2016), in which the Third Circuit found that police officers' testimony regarding the physical

19

comparisons between the suspect and bank robber on the surveillance video failed to meet the helpfulness requirement under F.R.E. 701(b).  One officer interviewed the suspect for the first time nearly two months after the robbery, while the other officer did not meet the suspect until after the trial began.  Id. at 299.  The court found that the officers did not have the sufficient level of familiarity needed to render a lay witness opinion helpful and "were no better equipped than the jurors to compare the suspect's appearance."  Ibid.

Washington also cites to the Ninth Circuit, which explained that "lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'"  United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005) (quoting United States v. Henderson, 241 F.3d 638, 650 (9th Cir. 2000)).

Washington asserts that the act of identification is a question of fact for the jury and "[t]he admission of any lay opinion by police officers or detectives who did not observe the defendant at the scene would plainly invade upon the province of the jury."  Although defense counsel did not object to the testimony, Washington claims that the admission of the testimony was an abuse of discretion resulting in the denial of his right to a fair trial and therefore, the plain error standard should be applied.  See R. 2:10-2.

A-1592-17T4

"Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." Ibid. It must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Defendant carries the burden of showing plain error. State v. Morton, 155 N.J. 383, 421 (1998).

Lay opinion testimony is permitted when it is "rationally based on the perception of the witness" and "will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. Lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." State v. McLean, 205 N.J. 438, 462 (2011). "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." Ibid.

The detective met Washington in person when interviewing him just four days after the murder. The statement was taped and played at trial. The detective identified Martin's car based on the personal knowledge he obtained while conducting a search of the car shortly after the murder.

A-1592-17T4

Washington has not met his burden of proving that any error in allowing the detective to narrate the videotape was of such a nature as to have been clearly capable of producing an unjust result.

F.  Testimony of Money Owed.

Washington takes issue with the victim's friend's testimony that on the day of the incident, he drove the victim to Martin's house because it "[s]ound[ed] like [Martin] owed [the victim] bread, he owned him money" for the Honda Accord.  Washington argues that this testimony lacked the necessary foundation under N.J.R.E. 602.  Since no evidence exists as to the friend's knowledge about this transaction, he asserts that the testimony was mere speculation.  While acknowledging that this issue was not raised at trial, he argues that because the testimony was used "to mislead the jurors to believe that [the victim] may have been shot due to some dispute over payment for the brown Honda Accord," his right to a fair trial was unduly impacted.

N.J.R.E. 602 states that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of testimony of that witness."

A-1592-17T4

The friend explained that he originally sold the car in question to the victim who then sold it to Martin. The friend drove the victim to Martin's house, thereby establishing his personal knowledge of the victim's purpose in seeking out Martin. Whether Martin actually owed the victim money was not important. Rather, the testimony established, as the State argues, "that the victim was acting as if Martin owed him money, thus explaining why the victim was looking for him and why an altercation leading to the victim's death may have likely ensued." The admission of the victim's friend's testimony is not plain error warranting reversal.

## IV. Motions for Judgment of Acquittal.

Martin and Washington both argue that the trial court erred in denying their pre and post-verdict motions for judgment of acquittal. They note that other than the evidence establishing their presence together near the scene of the crime, "there was simply no proof whatsoever of any agreement between the parties to commit murder."

A motion for a judgment of acquittal may be granted "if the evidence is insufficient to warrant a conviction." R. 3:18-1; R. 3:18-2; State v. Reyes, 50 N.J. 454, 458-59 (1967). We review the denial of such motions de novo. State v. Cruz-Pena, 459 N.J. Super. 513, 520 (App. Div. 2019). "We must determine

whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." State v. Williams, 218 N.J. 576, 594 (2014); Reyes, 50 N.J. at 458-59.

Conspiracy requires the finding of an agreement between two or more persons to commit a specific crime. N.J.S.A. 2C:5-2(a). The "agreement to commit a specific crime is at the heart of [the] conspiracy charge." State v. Samuels, 189 N.J. 236, 246 (2007). "[M]ere knowledge, acquiescence, or approval of the substantive offense, without an agreement to cooperate, is not enough to establish one as a participant in a conspiracy." State v. Abrams, 256 N.J. Super. 390, 401 (App. Div. 1992). "Because the conduct and words of co-conspirators is generally shrouded in 'silence, furtiveness and secrecy,' the conspiracy may be proven circumstantially." Samuels, 189 N.J. at 246 (quoting State v. Phelps, 96 N.J. 500, 509 (1984)).

In denying the defendants' motion for judgment of acquittal at the close of the State's case, the court summarized the State's evidence supporting the conspiracy charge as follows:

> [T]he State has pointed to several significant circumstances, chief among them [was] the presence of a bit of forensic evidence, an antenna associated with the vehicle own[ed] and operated by defendant Martin

24

at the scene of the crime within feet of the deceased. There is also the circumstance of the two defendants being in close contact with each other throughout the course of the day, of the homicide, and within the [forty-seven] minutes or so when the State contends that the homicide occurred, and the State points to circumstantial evidence of the [bar] video at 8:47 [p.m.] and thereabouts where the two defendants are found together as well as defendant Washington's statement that they were together at about [8:00 p.m.] that would be some direct evidence at least they're involved with each other. The State also points to the circumstances of changing of clothes. The inference which may be drawn therefrom is that there may be the secreting or removal of clothing that could shed some evidence on the case. Also the absence of cell phone usage immediately after the homicide, also speaking to the circumstances that the victim Williams was not a stranger to the defendant Martin pointing out, if not motive, context for the homicide that there was money owed over the transaction of a car.

In the letter decision rendered in response to the post-verdict motions for dismissal notwithstanding the verdict, the court emphasized that "although entirely based on circumstantial evidence," based on the fact that, on the day of the incident, the victim was looking for Martin, who was together with Washington, coupled with the other evidence, could cause the jury to reasonably conclude a conspiracy existed.

We agree that a jury could reasonably find guilt beyond a reasonable doubt. Based upon witness testimony, the security footage, and Washington's

25

statement to the police, no dispute exists that from 5:00 or 6:00 p.m. on the evening of the incident, Martin and Washington were together. A jury could infer that at 8:23 p.m., when Martin's phone pinged off a cell tower about six minutes from the crime scene, defendants were still together. Furthermore, the forensic evidence obtained from the car antenna pieces found at the scene and inside Martin's car support a finding that Martin had been at the scene.

While mere association is insufficient to establish a conspiracy, "[a]n implicit or tacit agreement may be inferred from the facts and circumstances." State v. Kamienski, 254 N.J. Super. 75, 94 (App. Div. 1992). Here, there was more than association. Given that Martin and Washington were together on the night of the incident, a reasonable inference may be drawn that they agreed to commit or aid each other in the murder of the victim.

We are satisfied that there was sufficient evidence for the jury to find defendants' guilt beyond a reasonable doubt. Their motions for judgment of acquittal made during and after trial were properly denied.

## V.  Motion for New Trial.

Due to the lack of evidence, Martin and Washington also argue that the trial court erred in denying their motion for a new trial.

26

A trial court may grant a motion for a new trial "if required in the interest of justice." R. 3:20-1. Unless "it clearly and convincingly appears that there was a manifest denial of justice under the law," the court should not set aside the jury's verdict. Ibid. Because "[a] motion for a new trial is addressed to the sound discretion of the trial judge . . . the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)).

For the reasons we affirm the denial of the defendants' motions for a judgment of acquittal, we hold that no "manifest denial of justice" occurred here to warrant reversal of the trial court's decision to deny the motion for a new trial. See R. 3:20-1.

## VI. Sentencing.

In reviewing a trial court's sentencing decision, we (1) "require that an exercise of discretion be based upon findings that are grounded in competent, reasonably credible evidence"; (2) "require that the factfinder apply correct legal principles in exercising its discretion"; and (3) "exercise that reserve of judicial power to modify sentences when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95

N.J. 334, 363–64 (1984). We must make sure that sentencing guidelines were not violated, determine that findings on aggravating and mitigating factors were "based upon competent credible evidence in the record," and decide whether "the application of the guidelines to the facts of this case make the sentence clearly unreasonable so as to shock the judicial conscience." Id. at 364–65.

Washington argues that the trial court misapplied the facts of the case and failed to properly weigh the aggravating and mitigating factors for sentencing in giving him a sentence above the mid-range. Washington refutes the trial court's application of aggravating factor three, "[t]he risk that the defendant will commit another offense"; factor six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"; and factor nine, "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a).

Washington had two convictions in Pennsylvania: a 2009 conviction for carrying a firearm in public in which he received a prison term of two to four years in prison and a 2015 conviction for harassment. The court was particularly concerned with Washington's prior involvement with firearms.

As for aggravating factor six, the serious nature of the instant offense, the trial court gave it moderate weight because "conspiracy to commit murder is among one of the most serious offenses under the criminal code."

As for aggravating factor nine, the need to deter defendant and others from violating the law, the court applied the greatest weight and found that Martin and Washington "involved themselves in the planning of the murder of someone with whom they apparently had illicit drug dealings who in the lawless milieu of drug dealings [with] such violent and unnecessary behavior calls out for the highest degree of deterrence." The officer who searched the victim's bedroom found several items indicative of drug paraphernalia "including a scale, individual white plastic bags that contained other bags, a money counter and a heat sealing device." Washington points out that the State's theory behind the conspiracy involved a dispute over payment for a car, not an illegal drug distribution. However, defendants argued in summation that the victim was a drug dealer and the court did not err in inferring drug involvement.

The court concluded that after weighing "the aggravating factors against the absence of mitigating factors, . . . the aggravating factors clearly and substantially preponderate over any other factor," and thus imposed a sentence

A-1592-17T4

above the mid-range "in order to effectively punish, correct and deter [Washington] from future lawlessness."

The trial court explained its reasoning on the record for the application of aggravating factors and a finding of no mitigating factors. The sentence does not "shock the judicial conscience." Roth, 95 N.J. 365.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION